**EXHIBIT "9"**




# ATTORNEY GENERAL OF MISSOURI

CHRIS KOSTER
ATTORNEY GENERAL

JEFFERSON CITY
65102

P.O. BOX 899
(573) 751-3321

November 17, 2010

Mr. James F. Kanatzar
Jackson County Prosecuting Attorney
Jackson County Courthousouse
415 East Twelfth Street, Floor 11
Kansas City, Missouri 64106

Dear Mr. Kanatzar,

    Attorney General Koster has asked me to respond to your inquiry regarding whether electronic scanning devices used to reveal results of Veterans of Foreign Wars ("VFW") raffles or sweepstakes are "gambling devices," and, whether the VFW's use of such devices violates Chapter 572, RSMo. In providing this response, we do not mean to suggest that we are giving you legal advice or otherwise treating you as a client of the Attorney General or any of his assistants. We merely wish to assist you in performing your official duties as the Prosecuting Attorney of Jackson County, Missouri.

    Consideration of whether a device is a "gambling device" pursuant to § 572.010(5), RSMo., is, necessarily, a fact-specific endeavor that may require technical expertise. It is simply not possible for us to opine as to a particular machine without having it examined – presumably by experts at the Missouri Gaming Commission, the state agency responsible for such tasks. Nonetheless, we can provide our views based on the description you give of the device being used.

    From your description, we conclude that the device merely scans previously purchased raffle or sweepstakes tickets and reveals the results of a contest that was already concluded. Neither the scanning method nor the game theme chosen for the video display that reveals entries increases or decreases the chance of winning, nor do they affect the item or amount won. Again, the number and type of prizes assigned to each ticket is assigned prior to the use of the device, and cannot be changed or modified by use of the device. Moreover, the device does not payout any prize.



**EXHIBIT 9**

www.ago.mo.gov

This response should not be construed to apply to any device that performs additional functions. Nor does it address what constitutes a "raffle" or "sweepstakes" (see Art. III 39(f)), because, regardless of what game selects a winning ticket, the game is completed prior to, and independent of, use of the device.

Because the device described above has no role in the playing phases of gambling activity, but instead displays predetermined results and performs no other function, the device is not a "gambling device," as defined by Chapter 572.010(5), RSMo.

Section 572.010(5), RSMo., defines "gambling device" as:

> any device, machine, paraphernalia or equipment that is used or usable in the playing phases of any gambling activity, whether that activity consists of gambling between persons or gambling by a person with a machine. However, lottery tickets, policy slips and other items used in the playing phases of lottery and policy schemes are not gambling devices within this definition.

Section 572.010(11), RSMo., defines "slot machine" as:

> a gambling device that as a result of the insertion of a coin or other object operates, either completely automatically or with the aid of some physical act by the player, in such a manner that, depending upon elements of chance, it may eject something of value. A device so constructed or readily adaptable or convertible to such use is no less a slot machine because it is not in working order or because some mechanical act of manipulation or repair is required to accomplish its adaptation, conversion or workability. Nor is it any less a slot machine because apart from its use or adaptability as such it may also sell or deliver something of value on a basis other than chance.

The statutory definitions have been addressed by the Missouri Court of Appeals – though never with regard to a device with the very limited functions of the one described in your request.

The Missouri Court of Appeals, Western District, found in *Veterans of Foreign Wars Post 6477 v. Missouri Gaming Commission* that competent and substantial evidence

2

supported finding that machines seized from Post 6477 were illegal gambling devices.[1] Such evidence included that each of the machines made payouts for play on the machines, meaning that players would receive something of value as a result of successful play on the machines.[2] All of the games had multiple-coin features, allowed playing more than one credit at a time, and awarded tickets to players.[3] The Western District found sufficient evidence that receipt of something of value was expected for successful game play, and that the machines were not merely used for entertainment purposes.[4]

The Western District also found sufficient evidence to support a finding that video game machines at issue in *Hemeyer v. Division of Liquor Control* met the definition of "gambling devices."[5] The court based its finding on features of the subject video game machines, including that the machines took money to play, were games of chance, rewarded players with credits, had internal accounting systems to track payoffs, and that credits could be cleared between players.[6]

Finally, the Missouri Court of Appeals, Eastern District, found video poker and slot machine games to be "gambling devices" in *Thole v. Westfall*. All machines required players to insert money to initiate play of electronic simulations of traditional card games, and this money was "staked or risked" on the outcome of the game.[7]

Among the many differences between the device you describe in your request, and those found to be "gambling devices" or "slot machines" in the cases cited above, is that the device addressed here does not appear to be a game at all. The playing phase of a raffle or sweepstakes is completed before the person uses the device. By the time a

---

[1] *Veterans of Foreign Wars Post 6477 v. Missouri Gaming Commission*, 260 S.W.3d 388, 392 (Mo.App.W.D., 2008.)

[2] *Id.* at 391.

[3] *Id.*

[4] *Id.* at 392. The court then went to quote from the Eastern District's opinion in *Thole v. Westfall*, 682 S.W.2d 33, 38 n. 12 (Mo.App.E.D., 1984), stating that "a claim that the repeated insertion of a coin or many coins into a machine to watch objects, numbers or cards appear at random in display windows, each operation completed in five seconds or less, could be 'amusing' to even a grade school boy stretches one's imagination."

[5] *Hemeyer v. Division of Liquor Control*, 49 S.W.3d 786, 793 (Mo.App.W.D., 2001)

[6] *Id.*

[7] *Thole v. Westfall*, 682 S.W.2d 33, 37 (Mo.App.W.D., 1984.)

3

person uses the device, the game is over, and all that is left is to determine whether (and if so, what) the person has won. The results are made available for viewing through the device, but are also available elsewhere. The device does not make any payouts to players, and no valuable benefit comes to any player by virtue of using the device that would not have come to the player had he or she avoided the device. While the device is token-operated, the tokens are reportedly provided to the player at no additional charge, and, as there is no indication that the tokens have any inherent value, or that the player stands to gain any number of tokens due to using the machine, the player is not "staking or risking" any additional money on the outcome of the game by using the device than has already been spent participating in the underlying raffle or sweepstakes. Again, the device as described simply reports the results of games already played; games which do not require use of the device in order to play. No matter how ornate, the mechanism used to display results is not a "gambling device" if that is all it does.

In conclusion, a device that does nothing more than reveal the results of a "raffle" or "sweepstakes" that has already been concluded is not a "gambling device" as described in § 572.010(5), RSMo., and the VFW's use of such a device to reveal the results of predetermined raffles or sweepstakes does not violate Chapter 572, RSMo. Whether that is an accurate description of the device being used by the VFW is beyond the scope of this opinion.

Very truly yours,

Jonathan M. Hensley
Assistant Attorney General

4