**EXHIBIT "15"**

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br><br>COUNTY OF GREENVILLE<br><br>Greenville County Sheriff's Office,<br><br>Plaintiff,<br><br>vs.<br><br>Sweepstakes Terminal No.0399<br><br>Defendant. | IN THE MAGISTRATE'S COURT<br><br>Case No.<br><br>**ORDER** |

Video poker is illegal in South Carolina. No party in this case is challenging that undisputed fact. This matter involves complicated issues of statutory construction and presents the limited question of whether, as a matter of law, Sweepstakes Terminal No.0399 ("the machine") is legal, not as a video poker machine, but as a means of conducting a promotional sweepstakes. This Order should not be interpreted by anyone as support for video poker in South Carolina.

## BACKGROUND

The machine was seized by the Greenville County Sheriff's Office ("the Sheriff") and a post-seizure hearing was conducted in front of this Court on March 25, 2011. Following the hearing, this Court found that "Section 12-21-2710 would likely prohibit [the machine] absent an exception" but that "Section 61-4-580(3) is an exception to 12-21-2710." The Sheriff appealed to the Circuit Court, which affirmed this Court's ruling on January 27, 2012. The Sheriff filed a motion to reconsider pursuant to Rule 59(e), SCRCP. On March 16, 2012, the Circuit Court granted the Sheriff's motion to reconsider and remanded the matter to this Court for further factual finding. A hearing was held before this Court on July 25, 2012.



EXHIBIT 15

Generally speaking, the positions of the parties are as follows: The Greenville County Sheriff's Office, represented by the Attorney General, maintains that the machine is illegal pursuant to the general prohibition on video poker set forth in S.C. Code Ann. § 12-21-2710 ("§ 2710"); that S.C. Code Ann. § 61-4-580(3) ("§ 580(3)") is not an exception to section § 2710; and that even if § 580(3) is an exception, the machine does not meet the necessary requirements. Play4Fun, Inc. ("Play4Fun"), the owner of the machine, maintains that by specific act of the General Assembly § 580(3) is an exception to § 2710; that the machine satisfies all the requirements of § 580(3); and that the promotion operated on the machine is legitimate. Based on the evidence presented at the hearing and the arguments of the parties, this Court finds that the machine may be of the sort generally prohibited by § 2710, but that § 580(3) is an exception to § 2710 and that the machine meets all the requirements necessary to fit within the exception. Furthermore, this Court finds that the promotion operated by the machine is legitimate. Thus, it is hereby ORDERED that the machine be returned to Play4Fun.

## FACTUAL FINDINGS

This case involves a machine that operates a promotion on behalf of a company called Products Direct. Products Direct is a start-up, e-commerce company that sells products exclusively on the internet. Like other online retailers such as Amazon.com, Products Direct does not have a brick-and-mortar storefront. Generally speaking, the promotion operates as follows:

1. The sweepstakes terminal describes the promotion and the sweepstakes rules on the screen. (Tr. Tran. pp. 54-55; Exhibit 10).
2. A customer inserts paper money into the terminal's bill acceptor. The terminal prints out a discount coupon worth twice the amount inserted into the bill acceptor. (Tr. Tran. pp. 55-56).
3. The customer can go online to Products Direct's website and use the discount coupon toward the purchase price of a variety of products, subject to maximum discount of 30 percent. (Tr. Tran. pp. 55-56).

2

4. In connection with the purchase of the discount coupon, the customer receives free entries into the sweepstakes, which is part of the terminal. The customer can play one of eight amusing games of chance to reveal whether he has won anything or instantly reveal the results by selecting the "Reveal Instant Winners" button. Thus, the customer is not required to play the games to see if he has won. (*Id.*).

5. In lieu of purchasing a discount coupon, a customer can follow the instructions on the terminal screen (or the posted written rules) and write in for a free sweepstakes entry code. Upon entering the code, the customer receives 100 free entries to play the sweepstakes. (Tr. Tran. pp. 97-98).

6. The games contained in the terminal include, but are not limited to, poker, keno and bingo. (Tr. Tran. p. 84).

7. A customer who wins cash in the sweepstakes may receive that cash from the store clerk. (Tr. Tran. pp. 53-59).

## DISCUSSION

The issue presented to this Court is whether the machine on which the promotion is operated is legal. This question turns on the interaction between two statutes enacted within a month of each other in 1999. At first glance, the statutes appear to conflict with one another. However, upon closer examination, this Court finds that the legislature intended for the two statutes to work together and serve as the framework governing the legality of devices such as the machine at issue.

**I.     Section 12-21-2710 is a general prohibition on video gaming but is not without exception.**

Section 12-21-2710, which imposes a general prohibition on certain types of gaming machines, states:

> It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, or any video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value, or other device operated by a slot in which is deposited a coin or thing of value for the play of poker, blackjack, keno, lotto, bingo, or craps, or any machine or device licensed pursuant to Section 12-21-2720 and used for gambling or any punch board, pull board, or other device pertaining to games of chance of whatever name or kind, including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine,

> but the provisions of this section do not extend to coin-operated nonpayout pin tables, in-line pin games, or to automatic weighing, measuring, musical, and vending machines which are constructed as to give a certain uniform and fair return in value for each coin deposited and in which there is no element of chance.

Based on the evidence presented to this Court, the machine may be of the sort generally prohibited by § 2710. However, this is of no consequence in this matter because this Court finds that § 580(3) is an exception to § 2710.

## II. Section 580(3) is an exception to § 2710.

Based on the well-established principles of statutory construction, this Court finds that § 580(3) is an exception to § 2710. Section 580(3) provides an **exception** for certain types of promotions conducted in businesses with beer and wine permits:

> No holder of a permit authorizing the sale of beer or wine or a servant, agent, or employee of the permittee may knowingly commit any of the following acts upon the licensed premises covered by the holder's permit:
>
> ...
>
> (3) permit gambling or games of chance **except** game promotions including contests, games of chance, or sweepstakes in which the elements of chance and prize are present and which comply with the following:
>
>> (a) the game promotion is conducted or offered in connection with the sale, promotion, or advertisement of a consumer product or service, or to enhance the brand or image of a supplier of consumer products or services;
>>
>> (b) no purchase payment, entry fee, or proof of purchase is required as a condition of entering the game promotion or receiving a prize; and
>>
>> (c) all materials advertising the game promotion clearly disclose that no purchase or payment is necessary to enter and provide details on the free method of participation.
>
> ...
>
> A violation of any provision of this section is a ground for the revocation or suspension of the holder's permit.

S.C. Code Ann. § 31-4-580(3) (emphasis added).

In construing a statute, this Court's primary purpose "is to ascertain and effectuate the intent of the legislature." *Denman v. City of Columbia*, 691 S.E.2d 465, 468 (S.C. 2010). This

4

Court must give the terms of a statute their plain and ordinary meaning, "without resort to subtle or forced construction to limit or expand the statute's operation." *Ward v. West Oil Co.*, 692 S.E.2d 516, 519 (S.C. 2010). For the foregoing reasons, this Court finds that § 580(3) is an exception to the general prohibition of video gaming found in § 2710.

### A. The plain language and legislative history of § 580(3) make clear that it is an exception to other prohibitions on gambling and games of chance, including § 2710.

Games of chance fall within the broad prohibition found in § 2710. Section 580(3) specifically addresses the limited instances when games of chance are legal. Statutes dealing with the same subject matter are *in pari materia* and must be construed together, if possible, to produce a single, harmonious result. *Joiner ex rel. Rivas v. Rivas*, 536 S.E.2d 372, 375 (S.C. 2000).

As a matter of the plain statutory language, § 580(3) is clearly an exception to the general prohibition set forth in § 2710. Section 580(3) begins by reiterating the prohibition on "gambling and games of chance"—a category that unquestionably includes machines outlawed by § 2710—but then goes on to state that the prohibition does not apply to promotions that meet the criteria listed in subsections (a), (b), and (c). These criteria do not restrict the method by which the games of chance or sweepstakes are delivered. Therefore, a sweepstakes terminal that meets the criteria is exempted from the general prohibition of § 2710.

The legislative history confirms the plain statutory text. Our Supreme Court has held that the title of an act is a proper source of legislative history. *See, e.g., Duvall v. S.C. Budget & Control Bd.*, 659 S.E.2d 125, 130 (S.C. 2008). The title of H.B. 3951, the Act which added subsection (3) to § 61-4-580, was:

5

> An Act to amend Section 61-4-580, ... relating to prohibited acts in an establishment licensed to sell beer or wine, *so as to exempt from the prohibition on gambling or games of chance promotional games conducted in connection with the sale or promotion of a consumer product or service* in which no entry fee or purchase is required of a participant and this no fee or purchase requirement is clearly disclosed.

H.B. 3951 (all caps omitted; emphasis added). The title of the Act itself thus makes clear that the legislature intended § 580(3) to operate as an *exemption* from general prohibitions on gambling, including § 2710. *See* BLACK'S LAW DICTIONARY 396 (6th ed. 1991) (defining "exempt" as "To relieve, excuse, or set free from a duty or service imposed upon the general class to which the individual exempted belongs."). Thus, this Court finds that § 580(3) is – as the General Assembly intended it to be an exemption from – or an exception to – the general prohibition on video gambling in § 2710.

**B.    Other rules of statutory construction indicate that § 580(3) is an exception to § 2710.**

In addition to the plain language of § 2710 and § 580(3), this Court finds that the application of well-settled rules of statutory construction make clear that § 580(3) is an exception to § 2710.

**1.    If two statutes appear to conflict, the more specific statute should be considered an exception to the general statute.**

In *Denman*, the South Carolina Supreme Court restated the established rule that when "there is one statute addressing an issue in general terms and another statute dealing with the identical issue in a more specific and definite manner, the more specific statute will be considered an exception to, or a qualifier of, the general statute and given such effect." *Denman*, 691 S.E.2d at 468-69 (internal quotation marks omitted). Section 580(3) is more specific than § 2710 because it applies to a limited number of individuals (beer or wine permit holders) and is limited to a particular type of gaming (game promotions used to promote a product or service).

Accordingly, this Court finds that the specific permission contained in § 580(3) operates as an exception to the general prohibition contained in § 2710.

> 2. **If two statutes appear to conflict, the more specific statute should prevail over the general statute.**

In *Denman*, the South Carolina Supreme Court restated the long standing presumption against repeal by implication. "Specific statutes are not to be considered repealed by a later general statute unless there is a *direct reference* to the earlier statute or the intent of the legislature to do so is *explicitly implied*. Repeal by implication is disfavored, and is found only when two statutes are incapable of any reasonable reconcilement." *Denman*, 691 S.E.2d at 469 (citations omitted).

The amendment of § 2710 that criminalized the possession or operation of video gaming machines was adopted during a special legislative session in June 1999. *Westside Quick Shop, Inc. v. Stewart*, 534 S.E.2d 270, 272 (S.C. 2000). Section 580(3) was enacted by the General Assembly in late May of 1999. Both bills were introduced during April 1999. The South Carolina General Assembly cannot have been unaware of § 580(3) when it approved the amendments to § 2710, yet § 2710 does not directly refer to § 580(3). Thus, this Court finds that § 580(3) survives the later effective date of § 2710.

> C. **The South Carolina Supreme Court's decision in *Sun Light Prepaid Phonecard* supports the conclusion that § 580(3) is an exception to § 2710.**

Furthermore, this Court is bound by the South Carolina Supreme Court's opinions in which it has already recognized that § 580(3) is an exception to § 2710. In *Sun Light Prepaid Phonecard Co. v. State*, 600 S.E.2d 61 (S.C. 2004), the South Carolina Supreme Court considered a purported "promotion" involving the sale of prepaid long distance phone cards. The Court rejected on the merits the appellants' argument that the scheme was permitted under

7

§ 580(3), concluding that "the phone cards and dispensers do not meet the requirements of § 61-4-580 because the game pieces are not a legitimate promotion or sweepstakes." *Id.* at 65. The majority did not specifically refer to § 580(3) as an exception to § 2710, but it did so implicitly by ruling that the requirements of § 580(3) had not been met, instead of finding that § 580(3) was not an exception to § 2710.[1]

Furthermore, even though the majority did not use the term, Justice Pleicones, in his dissenting opinion, specifically referred to § 580(3) as an "exception" to § 2710. *Id.* at 65-66 (Pleicones, J., dissenting) ("The General Assembly has legalized games of chances 'in connection with the sale, promotion or advertisement of a consumer good or service ...' if conducted on premises licensed for the sale of beer or wine."). Judge Pieper agreed with Justice Pleicones that § 580(3) is an exception to § 2710. *Id.* at 66 (Pieper, J., dissenting).

The Court revisited *Sun Light* in *Ward v. West Oil Co.*, 692 S.E.2d 516 (S.C. 2010), stating that in *Sun Light* it had "found the dispensers and phone cards *were not exempt* under section 61-4-580" because they were not a legitimate promotion or sweepstakes. *Id.* at 521 (emphasis added). Based on *Sun Light* and *Ward*, it is clear that the South Carolina Supreme Court recognizes § 580(3) as an exception to § 2710.

### III. The machine is legal under § 61-4-580(3).

Because §580(3) is an exception to § 2710, this Court must determine whether the machine satisfies all the requirements set forth in § 580(3). In order for a machine of the sort at issue to be legal in South Carolina, it must satisfy the elements set forth in § 580(3):

1. The location from where the machine was seized was a licensed premises covered by a valid permit authorizing the sale of beer or wine;

---

[1] In a footnote, the Supreme Court declined to address whether the machine at issue was legal pursuant to S.C. Code Ann. § 12-22-1040. Sun Light, 600 S.E.2d at 65, fn 8. If the Supreme Court did not view § 580(3) as an exception to § 2710, it would have simply declined to address it as well.

2. The game promotion includes the elements of chance and prize;

3. The game promotion is conducted or offered in connection with the sale, promotion, or advertisement of a consumer product or service, or to enhance the brand or image of a supplier of consumer products or services;

4. No purchase payment, entry fee, or proof of purchase is required as a condition of entering the game promotion or receiving a prize; and

5. All materials advertising the game promotion clearly disclose that no purchase or payment is necessary and provide details on the free method of participation.

This Court finds as fact that the sweepstakes promotion and the machine comply with the requirements of § 580(3) for the following reasons:

1. The location at which the seized sweepstakes terminal was placed has a permit authorizing the sale of beer or wine. The machine was located at a convenience store on East Lee Road in Taylors, South Carolina, which was a licensed premises. (Willis Testimony, Tr. Tran. P. 108, Exhibits 8 and 9).

2. The game promotion presented by the machine includes the elements of chance and prize. (Tr. Tran. pp. 84, 88, 89).

3. The promotion is conducted or offered in connection with the sale of discount coupons for the purchase of consumer products and to enhance the brand or image of Products Direct. (Tr. Tran. P. 19).

4. No purchase payment, entry fee, or proof of purchase is required as a condition of entering the game promotion or receiving a prize. As set forth in the sweepstakes rules which are on the terminal screen and in writing posted on the terminal, a customer may enter the sweepstakes without a purchase by sending a written request to Products Direct at the mailing address provided for free entries. (Tr. Tran. P. 54; Exhibit 10).

5. The machine, which is the only material advertising the Products Direct promotion, clearly discloses that no purchase or payment is necessary to enter and it provides details about the free method of participation. (Tr. Tran. P. 53; Exhibit 10).

For these reasons, this Court finds that the machine satisfies all the requirements set forth in § 580(3), and now turns to the question of whether the promotion operated on the machine is legitimate pursuant to the Supreme Court's decision in *Sun Light*.

IV. **The sweepstakes promotion utilized by the machine is legitimate as required by the Supreme Court in *Sun Light*.**

In order for a machine to be found legal pursuant to § 580(3), the South Carolina Supreme Court requires that the promotion it operates be "legitimate." *See Sun Light*, 600 S.E.2d at 65. *Sun Light* does not define the term "legitimate." However, Black's Law Dictionary provides several alternate definitions of "legitimate." The two that could apply here are: "1. Complying with the law; lawful" and "2. Genuine; valid". See BLACK'S LAW DICTIONARY (9th ed. 2009). This Court assumes that the Supreme Court did not mean "complying with the law" or "lawful" when using the term legitimate because applying that definition would simply require an application of the terms of § 580(3). The Supreme Court must have meant that there was an inherent requirement that the promotion be "genuine" or "valid" in order to declare a machine on which it the promotion operates legal pursuant to § 580(3). That is the standard this Court applies here.

A. **The Sheriff offered only hypothetical scenarios, as opposed to actual evidence, in its attempt to show the promotion was not legitimate.**

The Sheriff presented hypothetical scenarios, but no concrete evidence tending to indicate that the sweepstakes promotion operated by the machine was not legitimate. For instance, the Sheriff argued that it could take someone a significant period of time to reveal their sweepstakes entries after purchasing their coupon, thus some people might have to wait in line if they also wanted to purchase coupons. (Tr. Tran. pp. 86-87). The Sheriff suggested, without supporting evidence, that no one would wait in line to purchase a coupon and inferred that these hypothetical people were actually waiting in line to play the games. However, there is absolutely no evidence in the record to support this conjectural assertion and thus this Court cannot accept their inference regarding legitimacy.

Furthermore, the Sheriff argues that it is possible to insert $1,400.00 into the machine and only receive $1000.00 in coupon credit. (Tr. Tran. p. 92). Thus, the Sheriff argues that because a consumer is supposed to receive $2.00 in coupon credit for every $1.00 inserted into the machine the hypothetical consumer who placed $1,400.00 into the machine is actually purchasing plays in the games of chance with every dollar over $500.00. Once again, however, there is absolutely no evidence in the record to support this hypothetical assertion. Also, the rules clearly state that dollar value is capped at $1,000.00 per coupon.

> B. **Play4Fun presented actual, concrete evidence proving that the promotion operated by the machine was "genuine" and "valid," thus "legitimate" as required by Sun Light.**

Play4Fun presented evidence supporting its position that the promotion operated by the machine was legitimate. The testimony of Dwayne Waxer provided substantial supporting evidence for the claim that the promotion operated by the machine was legitimate. Mr. Waxer is Vice President of Operations of Pace-O-Matic, the parent company of Products Direct. (Tr. Tran. p. 13). His main duty as Vice President is "to build the brand and image and online retailing business" of Products Direct. (Tr. Tran. p. 12). He has a degree in business administration with an emphasis in marketing as well as professional and practical experience in marketing. (Tr. Tran. 11-13).

This Court finds that the legitimate objective of the Products Direct sweepstakes operated by the machine and others like it is to enhance the brand name of Products Direct and sell consumer goods online. Mr. Waxer testified that Products Direct is an online retail company that sells an array of consumer goods. He compared Products Direct to amazon.com and overstock.com. (Tr. Tran. p. 14). Mr. Waxer provided examples of the goods sold by Products Direct, such as "grills, outdoor fireplaces, kids' books, kids' toys such as puzzles, [and] hunting

gear." (Tr. Tran. p. 18). He also testified that the Products Direct inventory is sourced from three types of relationships. According to Mr. Waxer, Products Direct (i) manufactures by contract its own branded products, such as coffee and tea, (ii) has entered into sales arrangements concerning officially licensed products direct with certain manufacturers, and (iii) has a relationship with a fulfillment house to provide variety while building its manufacturing relationships. (Tr. Tran. pp. 14-19; Exhibits 1 and 2).

Mr. Waxer also explained that Products Direct chose to use the sweepstakes as its initial marketing tool. (Tr. Tran. p. 18). In his professional opinion, the sweepstakes is an effective tool to enhance the brand image of Products Direct and increase sales. (Tr. Tran. p. 19). Mr. Waxer's opinion is not unsupported by factual evidence – he also testified that Products Direct utilizes a service called "Google Analytics" to assess the effectiveness of the sweepstakes as a marketing effort. In Mr. Waxer's words, "Google Analytics is a very dynamic tool that…gives you a good temperature on what your marketing efforts are producing and also how people respond to your website." (Tr. Tran. p. 20).

Based on the evidence presented at trial it is clear that the sweepstakes promotion is effectively driving consumers to the Products Direct website where they are able to use the discount coupon they purchased from the machine. First, Google Analytics data indicates that the two states from which the bulk of internet traffic originate are Hawaii and South Carolina. (Exhibit 3). According to Mr. Waxer, those are the two states in which Products Direct has placed the bulk of its machines. Second, Google Analytics data indicates that approximately 58% of the visitors to the Products Direct website are "new visitors" and approximately 42% are "returning visitors." (Exhibit 4). According to Mr. Waxer, these numbers indicate that the sweepstakes promotion is effectively driving new consumers to the website. Finally, Google

Analytics data indicates how various consumers arrived at the Products Direct website. For instance, it was shown that 66.06% of visitors went direct to the Products Direct website by typing "www.redeemsite.com" into their browser, 26.49% of consumers arrived at the website by using a search engine, and 7.45% arrived at the website by clicking on a link at a referring site or in an email. (Exhibit 5, Tr. Tran. pp. 24-25). According to Mr. Waxer, the only place an individual can learn the Products Direct url is through the sweepstakes terminals. Thus, because such a high percentage of visitors arrive at the website by simply typing the Products Direct url – www.redeemsite.com – in their browser, it clearly indicates that the sweepstakes is effectively driving consumers to the website where they can purchase products from Products Direct.

This Court finds that the promotion conducted by the machine is aimed at the enhancement of the Products Direct brand and the sale of goods on the Products Direct website. Also, this Court finds that the testimony of Mr. Waxer was very instructive and conclusively established that the sweepstakes promotion is an effective marketing tool. Furthermore, this Court finds that the aim and object of Products direct is to sell products and increase their market share of the online retail business. Thus, this Court finds that the promotion operated on the machine is legitimate as is required by the Supreme Court in *Sun Light*.

## CONCLUSION

This Court finds that although the machine may be of the sort generally prohibited by § 2710, it does not need to address that provision because it also finds that § 580(3) is an exception to § 2710. Furthermore, this Court finds that the machine at issue meets the requirements set forth in § 580(3) and is thus, on its face, a legal sweepstakes machine. Additionally, this Court finds that based on the evidence presented to it that the promotion operated by the machine is legitimate. Thus, it is hereby ORDERED that the machine be returned to Play4Fun.

IT IS SO ORDERED.

Dated: __9/4/__, 2012

The Honorable Charles R. Garrett
Greenville County Magistrate Court Judge