**EXHIBIT "16"**

STATE OF SOUTH CAROLINA  IN THE COURT OF COMMON PLEAS

COUNTY OF GREENVILLE

2012 JAN 27 P 4: 53

Greenville County Sheriff's Department,  Civil Action No.: 2011-CP-23-2657

    Appellant,

v.

Sweepstakes Terminal No. 0399,

    Respondent.

**ORDER**

The Greenville County Sheriff's Department appeals the Order of Magistrate Charles R. Garrett dated April 7, 2011 ruling that Sweepstakes Terminal No. 0399 is legal under South Carolina law. For the reasons that follow, Judge Garrett's decision is affirmed.

## FACTUAL AND PROCEDURAL HISTORY

Play4Fun owns Sweepstakes Terminal No. 0399 (the "Terminal") and placed it in a retail establishment in Greenville County for the purpose of conducting a sweepstakes promotion with Products Direct, LLC. Products Direct sells a variety of consumer products via its website at www.redeemsite.com. In an attempt to increase sales and awareness of its website, Products Direct is running a sweepstakes promotion involving the sale of discount coupons. The sweepstakes promotion uses a video terminal which contains the sweepstakes games and dispenses discount coupons. The promotion operates as follows:

    1. The sweepstakes terminal describes the promotion and the sweepstakes rules on the screen.

    2. A customer inserts paper money into the terminal's bill acceptor. The terminal immediately prints out a discount coupon worth twice the amount inserted into the bill acceptor.



3. The customer can go online to Products Direct's website (www.redeemsite.com) and use the discount coupon toward the purchase price of a variety of products, subject to a maximum discount of 30 percent.

4. In connection with the purchase of the discount coupon, the customer receives free entries into the sweepstakes, which is part of the terminal. The customer can play one of eight games to reveal whether he has won anything or choose to instantly reveal the results by selecting the "Reveal Instant Winners" button. Thus, the customer is not required to play the games to see if he has won.

5. In lieu of purchasing a discount coupon, a customer can follow the instructions on the terminal screen (or the posted written rules) and write in for a free sweepstakes entry code. Upon entering the code, the customer receives 100 free entries to play the sweepstakes.

6. The games contained in the terminal include, but are not limited to, poker, keno and bingo.

7. If a customer wins cash in the sweepstakes, he may receive that cash from the store clerk.

8. A customer *cannot* replay his winnings (*i.e.*, there is no "free play feature"). The only way to obtain additional entries is to purchase an additional discount coupon or to write in for a free entry code.

9. Play4Fun places the terminals in legitimate businesses that possess beer or wine permits.

After the Terminal was seized, a post-seizure hearing was conducted before Judge Garrett on March 25, 2011. Following the hearing, the court accepted post-hearing briefs[1] and then entered a written order finding that "Section 61-4-580(3) is an exception to 12-21-2710." Order at 4. Accordingly, Judge Garrett ordered the Terminal returned to Play4Fun.

## STANDARD OF REVIEW

In considering an appeal from the decision of a magistrate court, the circuit court "may affirm or reverse the judgment of the court below, in whole or in part, as to any or all the parties and for errors of law or fact." S.C. Code Ann. § 18-7-170; *see Parks v. Characters Night Club*, 548 S.E.2d 605, 608 (S.C. Ct. App. 2001) (on appeal from magistrate court, the circuit court may make its own findings of fact). However, the court "cannot consider questions that have not

---

[1] At the hearing, Judge Garrett requested that legal briefs be submitted during or after the hearing. The Solicitor's office submitted its brief during the hearing and Play4Fun submitted its brief after the hearing.

been presented to the magistrate," and the parties "are restricted to the theory on which the case was tried in the magistrate court." *Indigo Assocs. v. Ryan Inv. Co.*, 431 S.E.2d 271, 273-274 (S.C. Ct. App. 1993).

## BURDEN OF PROOF

At a post-seizure hearing, the burden is on the owner of the *res* to show why the seized property should not be forfeited and destroyed. *Union County Sheriff's Office v. Henderson*, --- S.E.2d ---, 2011 WL 6347850 (S.C. Sup. Ct. Op. No. 27077, filed December 19, 2011) (citing *State v. 192 Coin-Operated Video Game Machines*, 338 S.C. 176, 525 S.E.2d 872 (2000)).

## DISCUSSION

This case involves the interaction between two statutes enacted within a month of each other in 1999. Section 12-21-2710 imposes a general prohibition on certain types of gaming machines:

> It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, or any video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value, or other device operated by a slot in which is deposited a coin or thing of value for the play of poker, blackjack, keno, lotto, bingo, or craps, or any machine or device licensed pursuant to Section 12-21-2720 and used for gambling or any punch board, pull board, or other device pertaining to games of chance of whatever name or kind, including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine, but the provisions of this section do not extend to coin-operated nonpayout pin tables, in-line pin games, or to automatic weighing, measuring, musical, and vending machines which are constructed as to give a certain uniform and fair return in value for each coin deposited and in which there is no element of chance.

Section 61-4-580(3) provides an exception for certain types of promotions conducted in businesses with beer or wine permits:

> No holder of a permit authorizing the sale of beer or wine or a servant, agent, or employee of the permittee may knowingly commit any of the following acts upon the licensed premises covered by the holder's permit:
>
> ...
>
> (3) permit gambling or games of chance **except** game promotions including contests, games of chance, or sweepstakes in which the elements of chance and prize are present and which comply with the following:
>
>> (a) the game promotion is conducted or offered in connection with the sale, promotion, or advertisement of a consumer product or service, or to enhance the brand or image of a supplier of consumer products or services;
>>
>> (b) no purchase payment, entry fee, or proof of purchase is required as a condition of entering the game promotion or receiving a prize; and
>>
>> (c) all materials advertising the game promotion clearly disclose that no purchase or payment is necessary to enter and provide details on the free method of participation.
>
> ...
>
> A violation of any provision of this section is a ground for the revocation or suspension of the holder's permit. (emphasis added).

### A. The Products Direct sweepstakes promotion and the Terminal are legal under § 61-4-580(3).

Judge Garrett found as a fact that the sweepstakes promotion and the Terminal complied with the requirements of § 61-4-580(3) for the following reasons:

1. The location at which the seized sweepstakes terminal was placed has a permit authorizing the sale of beer or wine.
2. The promotion is conducted or offered in connection with the sale of discount coupons for the purchase of consumer products and to enhance the brand or image of Products Direct.
3. No purchase payment, entry fee, or proof of purchase is required as a condition of entering the game promotion or receiving a prize. As set forth in the sweepstakes rules which are on the terminal screen and in writing posted on the terminal, a customer may enter the sweepstakes without a purchase by sending a written request to Products Direct at the mailing address provided for free entries.
4. All materials advertising the Products Direct promotion clearly disclose that no purchase or payment is necessary to enter and provide details about the free method of participation.

Order at 3-4. Judge Garrett also found that "the purchaser of the discount coupon receives real

value for it." Order at 5. These findings are amply supported by the evidence presented to Judge Garrett, including the declaration of Michael Pace and the declaration of Earl Crawford.

The State waived any opportunity to challenge the promotion's compliance with § 61-4-580(3). The circuit court, acting as an appellate court in a case heard by a magistrate, cannot consider questions that have not been presented to the magistrate. *See Indigo Assocs., supra*, 431 S.E.2d at 273. The State did not question the legitimacy of the Products Direct sweepstakes promotion or the Terminal's compliance with § 580(3) in its memorandum to Judge Garrett, and the issue was neither raised nor discussed during the hearing. Accordingly, the State cannot now challenge the legitimacy of the promotion.

**B.  Because the Terminal complies with § 580(3), it is exempt from the prohibition in § 12-21-2710.**

Judge Garrett correctly ruled that § 580(3) exempts the Terminal from the prohibition set forth in § 2710. Whether § 580(3) is an exemption from § 2710 is a question of statutory construction. In construing a statute, the court's primary purpose "is to ascertain and effectuate the intent of the legislature." *Denman v. City of Columbia*, 691 S.E.2d 465, 468 (S.C. 2010). The court must give the terms of a statute their plain and ordinary meaning "without resort to subtle or forced construction to limit or expand the statute's operation." *Ward v. West Oil Co.*, 692 S.E.2d 516, 519 (S.C. 2010).

Also, "[f]orfeitures are not favored in the law or equity." *Ducworth v. Neely*, 459 S.E.2d 896, 899 (S.C. Ct. App. 1995). Because forfeiture is "by its nature" a penal action, laws providing for forfeiture must be strictly construed and are subject to the rule of lenity. *Allendale Cty. Sheriff's Office v. Two Chess Challenge II*, 606 S.E.2d 471, 474 (S.C. 2004); *see also Berry v. State*, 675 S.E.2d 425, 426-27 (S.C. 2009) ("[I]n construing a criminal statute, we are guided by the rule of lenity—the principle that any ambiguity must be resolved in favor of the

accused.").

This is a pivotal point. The rule of lenity "ensures fair warning by so resolving ambiguity in a . . . statute as to apply it only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997) (emphasis added). To the extent there is some ambiguity in the language of either § 2710 or § 580(3) as to whether the machines should be forfeited, the rule of lenity requires a court to resolve the ambiguity in Respondent's favor.

### 1. The plain language and legislative history of § 580(3) make clear that it is an exemption from other prohibitions on gambling and games of chance, including § 2710.

Section 2710 and § 580(3) both deal with the same subject matter, namely, games of chance or sweepstakes. Statutes dealing with the same subject matter are *in pari materia* and must be construed together, if possible, to produce a single, harmonious result. *Joiner ex rel. Rivas v. Rivas*, 536 S.E.2d 372, 375 (S.C. 2000).

As a matter of the plain statutory language, § 580(3) is clearly an exemption from the general prohibition set forth in § 2710. Section 580(3) begins by reiterating the prohibition on "gambling and games of chance"—a category that includes machines outlawed by § 2710—but then goes on to state that the prohibition does not apply to promotions that meet the criteria listed in subsections (a), (b), and (c). These criteria do not restrict the method by which the games of chance or sweepstakes are delivered. Therefore, a sweepstakes terminal that meets the criteria is exempted from the general prohibition of § 2710.[2]

"Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the Court has no right to impose

---

[2] The State argues that § 580(3) does not apply to machines. The argument is unsupported by the statutory text, which makes no distinction among the various means by which a promotion may be operated. The State further asserts that § 2710 makes video gaming machines contraband per se, a contention that cannot overcome the plain language of § 580(3).

another meaning." *State v. Pittman*, 373 S.C. 527, 561, 647 S.E.2d 144, 161 (2007). The inquiry into the meaning of the Act ends where it begins: the language of the Act is plain, and therefore "the sole function for the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485 (1917); *see also Carcieri v. Salazar*, 129 S.Ct. 1058 (2009). Faithful to these principles, a court must presume that by carving out § 580(3) as an exemption from the general prohibition set forth in § 2710, the legislature meant what it said. *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992) ("Courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

The legislative history confirms the plain statutory text. The South Carolina Supreme Court has held that the title of an act is a proper source of legislative history. *See, e.g., Duvall v. S.C. Budget & Control Bd.*, 659 S.E.2d 125, 130 (S.C. 2008). The title of H.B. 3951, the Act which added subsection (3) to § 61-4-580, was:

> An Act to amend Section 61-4-580, ... relating to prohibited acts in an establishment licensed to sell beer or wine, *so as to exempt from the prohibition on gambling or games of chance promotional games conducted in connection with the sale or promotion of a consumer product or service* in which no entry fee or purchase is required of a participant and this no fee or purchase requirement is clearly disclosed.

H.B. 3951 (all caps omitted; emphasis added). The title of the Act itself thus makes clear that the legislature intended § 580(3) to operate as an exemption from general prohibitions on gambling, including § 2710.

2. **Other rules of statutory construction indicate that § 580(3) is an exemption from § 2710.**

   i. *If two statutes appear to conflict, the more specific statute should be considered an exception to the general statute.*

In *Denman*, the South Carolina Supreme Court restated the established rule that when "there is one statute addressing an issue in general terms and another statute dealing with the

#7 of 12
file

identical issue in a more specific and definite manner, the more specific statute will be considered an exception to, or a qualifier of, the general statute and given such effect." *Denman*, 691 S.E.2d at 468-69 (internal quotation marks omitted). Section 580(3) is more specific than § 2710 because it applies to a limited number of people (beer or wine permit holders) and is limited to a particular type of gaming (game promotions used to promote a product or service). Accordingly, the specific permission contained in § 580(3) operates as an exception to the general prohibition contained in § 2710.

### ii. *If two statutes appear to conflict, the more specific statute should prevail over the later in time general statute.*

In *Denman*, the South Carolina Supreme Court restated the long standing presumption against repeal by implication. "Specific statutes are not to be considered repealed by a later general statute unless there is a *direct reference* to the earlier statute or the intent of the legislature to do so is *explicitly implied*. Repeal by implication is disfavored, and is found only when two statutes are incapable of any reasonable reconcilement." *Denman*, 691 S.E.2d at 469 (citations omitted) (emphasis added). The amendment to § 2710 that prohibited the possession or operation of video gaming machines was enacted during a special legislative session in June 1999. *Westside Quick Shop, Inc. v. Stewart*, 534 S.E.2d 270, 272 (S.C. 2000). Section 580(3) was enacted by the Legislature in late May of 1999. Both bills were introduced during April 1999. The South Carolina Legislature cannot have been unaware of § 580(3) when it approved the amendments to § 2710, yet § 2710 does not directly refer to § 580(3). Thus, § 580(3) survives the later effective date of § 2710.

The Legislature removed any lingering doubt concerning its intent in this regard with the following statement in Section 22(C) of Act No. 125 of 1999:

(C) It is the intent of the General Assembly that the provisions of this act shall not

be construed to:

....

(2) affect any provision of current law, unless or until it is specifically modified or expressly repealed or provided in this act.

### 3. The South Carolina Supreme Court's decision in *Sun Light Prepaid Phonecard* supports the conclusion that § 580(3) is an exemption from § 2710.

In *Sun Light Prepaid Phonecard Co. v. State*, 600 S.E.2d 61 (S.C. 2004), the South Carolina Supreme Court considered a purported "promotion" involving the sale of prepaid long distance phone cards. The Court rejected on the merits the appellants' argument that the scheme was permitted under § 580(3), concluding that "the phone cards and dispensers do not meet the requirements of § 61-4-580 because the game pieces are not a legitimate promotion or sweepstakes." *Id.* at 65. The majority did not specifically refer to § 580(3) as an exemption from § 2710, but it did so implicitly by ruling that the requirements of § 580(3) had not been met, instead of finding that § 580(3) was not an exemption from § 2710. Justice Pleicones, in his dissenting opinion, specifically referred to § 580(3) as an "exception" to Section 12-21-2710. *Id.* at 65-66 (Pleicones, J., dissenting). Judge Pieper agreed with Justice Pleicones that § 580(3) is an exception to § 2710. *Id.* at 66 (Pieper, J., dissenting).

The Court revisited *Sun Light* in *Ward v. West Oil Co.*, 692 S.E.2d 516 (S.C. 2010), stating that in *Sun Light* it had "found the dispensers and phone cards *were not exempt* under section 61-4-580" because they were not a legitimate promotion or sweepstakes. *Id.* at 521 (emphasis added). Based on *Sun Light* and *Ward*, it is clear that the South Carolina Supreme Court recognizes § 580(3) as an exception to § 2710.

C. **The State's arguments lack merit.**

In the proceedings before Judge Garrett, the State offered three theories to support its

position that the Terminal is prohibited by § 2710:[3] (1) A civil licensing statute cannot create an exemption from criminal liability; (2) assuming such an exemption is possible, the legislative history does not show an intent to create one; and (3) even if the Terminal satisfies the criteria of § 61-4-580(3), its operation is nevertheless illegal under § 61-4-580(5). All of these arguments are without merit.

### 1. The State's civil licensing argument violates principals of statutory construction.

The State's memorandum below cited no authority to support its argument that a civil licensing statute cannot create an exemption from a criminal prohibition. The State's position cannot be correct. If a sweepstakes terminal that fully complies with § 580(3) is nevertheless illegal under § 2710, the exemption has no effect. No rational business owner would operate a promotion under § 580(3) if doing so would subject him to criminal liability, even if the business could retain its beer or wine license. The State's reasoning also violates basic principles of statutory construction. A court must read a statute "so that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous, for the General Assembly obviously intended the statute to have some efficacy, or the legislature would not have enacted it into law." *CFRE, LLC v. Greenville County Assessor*, --- S.E.2d ----, 2011 WL 3804517 (S.C. Sup. Ct. Op. No. 27032, filed Aug. 29, 2011) (citations, internal quotation marks and alterations omitted); *see also Corley v. United States*, 129 S.Ct. 1558, 1566 (2009) ("[o]ne of the most basic interpretative cannons" requires that a "'[a] statute should be construed so that effect is given to all its

---

[3] The applicable standard of review prohibits the State from raising any different theories on appeal to this Court. *Indigo Assocs.*, 431 S.E.2d at 273. Accordingly, the Court has not considered the arguments and theories newly raised by the State on appeal including, *inter alia*, the following: (1) that the business where Play4Fun placed the Terminal did not have a beer and wine permit; (2) that the Terminal and the promotion do not comply with the requirements of § 580(3); (3) that the purchaser of a discount coupon does not receive real value for it or that the sweepstakes is otherwise illegitimate; and (4) that the ability to play the sweepstakes game without making a purchase is irrelevant to the validity of the promotion.



provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'") (quoting 2A N. Singer, Statutes and Statutory Construction § 46.06, pp.181-186 (rev. 6th ed. 2000)).

### 2. Contrary to the State's claim, the legislative history does indicate that § 580(3) is an exemption from § 2710.

The State argued below that if the General Assembly had intended for § 580(3) to be an exemption from § 2710, it would have said so. As discussed above, the Legislature *did* say so, in the title of House Bill 3951, where it stated that § 580(3) is an exemption from the general prohibition on gambling or games of chance.

### 3. Contrary to the State's claim, Section 61-4-580(5) does not apply.

Finally, the State argued that even if the Terminal is permitted by § 580(3), it is prohibited under § 61-4-580(5), which provides that the holder of a beer or wine permit may not "permit any act, the commission of which ... constitutes a crime under the laws of this State." This argument violates the rule that a "statute must be read as a whole and sections which are part of the same general statutory law must be construed together and each one given effect." *S.C. State Ports Auth. v. Jasper County*, 629 S.E.2d 624, 629 (S.C. 2006).

### CONCLUSION

For the reasons set forth above, Judge Garrett's order is affirmed. The court is keenly aware of the checkered history of video gambling in our state, and the intense policy debate that occurred in the 1990's culminating in the passage of § 12-21-2710. The court is also mindful that some may view this decision as letting the proverbial camel's nose under the tent of the prohibition of video poker. Trial courts do not set policy; instead they attempt to apply the plain language of statutory law to concrete disputes. This task entails discerning the intent of our Legislature—by using the words they carefully chose—to determine the legality of the conduct

of the parties. This court has concluded that the promotion at issue here constitutes legal conduct as authorized by § 61-4-580(3). Outside of an appeal, the remedy for any dissatisfaction with this conclusion is properly addressed to the Legislature, not this court. The Legislature may amend the statute; this court cannot.

    IT IS SO ORDERED.

D. [signature]

D. Garrison Hill
Circuit Judge

January 27, 2012
Greenville, South Carolina