**EXHIBIT "18"**

KEITH M. KIUCHI, ALC
KEITH M. KIUCHI #2735
American Savings Bank Tower,
1001 Bishop Street, Suite 985
Honolulu, Hawaii 96813
TEL.: (808) 533-2230
FAX: (808) 533-4391

Attorneys for PJY ENTERPRISES, LLC,
and GDFT, LLC, DBA KANPAI BAR AND GRILL

RECEIVED
LIQUOR COMMISSION
C&C OF HONOLULU

2011 APR 21 AM 10: 13

HONOLULU LIQUOR COMMISSION

CITY AND COUNTY OF HONOLULU

STATE OF HAWAII

| | |
|---|---|
| In re: GDFT, LLC, dba Kanpai Bar and Grill; 404 Ward Avenue, Honolulu, HI, 96814 )<br><br>Licensee, ) | Restaurant General Liquor License No. R0411<br><br>JOINT PETITION OF PJY ENTERPRISES, LLC and GDFT, LLC, DBA KANPAI BAR AND GRILL, FOR DECLARATORY RULING BY HONOLULU LIQUOR COMMISSION TO ALLOW USE OF PRODUCTS DIRECT SWEEPSTAKES TERMINALS IN PREMISES; EXHIBITS "1" – "6" |

**JOINT PETITION OF PJY ENTERPRISES, LLC AND GDFT, LLC, DBA KANPAI BAR AND GRILL, FOR DECLARATORY RULING BY HONOLULU LIQUOR COMMISSION TO ALLOW PRODUCTS DIRECT SWEEPSTAKES TERMINALS IN PREMISES**

COMES NOW Liquor Licensee GDFT, LLC, dba KANPAI BAR AND GRILL

(hereafter "GDFT"), and PJY ENTERPRISES, LLC (hereafter "PJY"), and hereby jointly

petition the Honolulu Liquor Commission, pursuant to §3-81-17.2 to allow the use of the



EXHIBIT 18

Products Direct Sweepstakes Terminals on GDFT's premises at 404 Ward Avenue, Honolulu, Hawaii 96814. In support of said Petition, Petitioners state as follows:

1.     Petitioner GDFT'S address IS 404 Ward Avenue, Honolulu, Hawaii 96814. PJY's address is 98-402 Koauka Loop, #1503, Aiea, Hawaii 96701. Petitioner GDFT is a liquor licensee of the Honolulu Liquor Commission.

2.     Petitioner GDFT has an interest in having the terminals described in this petition installed on their premises. Petitioner PJY is the Hawaii distributor of the terminals described in this petition.

3.     This Commission has jurisdiction to hear this matter pursuant to §3-82-47.1, which gives the Honolulu Liquor Commission jurisdiction over "All forms of live/professional music, dancing and entertainment, including but not limited to electronic gaming devices, card playing and table games" in a licensed premises. Said rule further requires that prior Commission approval be obtained for such entertainment.

4.     <u>Phone Cards</u>. This Commission has previously approved the use of phone card machines in liquor establishments in the City and County of Honolulu. Specifically on November 10, 2005 the Honolulu Liquor Commission approved the sale of phone cards distributed by Larbil, Inc., in a six column vending machine. Based upon this decision, KP Amusements submitted a request for approval of a four column vending machine, which was approved on January 26, 2006. Attached hereto as Exhibit "1", are letters from the Honolulu Liquor Commission dating back to 2006 relating to the previous approval given by the Honolulu Liquor Commission to KP Amusements to use these phone card machines. These phone card machines were essentially card dispensers. Customers would buy phone cards from the machine for $1.00, which would give them 5 minutes of phone time. Accompanying each phone card was

2

a sweepstakes game, in which the customer would have the opportunity to win a prize in a pull-tab or scratch-off game. The machine would have the name and address of the company where the customers can take part in the game without making a purchase. In the case of the phone cards the customers received something of value, phone time, and the sweepstakes game was available both to customers that purchased the phone cards and customers that wrote in for free game pieces in the sweepstakes game.

     5.   <u>Legality of Phone Card Sweepstakes.</u>  These phone card sweepstakes were subsequently found to be legal in several states. In North Carolina, the North Carolina Court of Appeals in ***American Treasures, Inc. et. al. vs. State of North Carolina,*** No. 02 CVS 001717, North Carolina Court of Appeals, March 24, 2005, declared that phone cards were not an illegal gambling arrangement. First, the court stated that the consumer pays for the actual phone card and not the associated game promotion. The court cited evidence present that the phone card rate was "not merely competitive, but one of the best in the industry." Based upon this evidence the court concluded that the price being charged for the card "has sufficient value and utility to support the conclusion that it, and not the associated game of chance, is the object being purchased." Thus the key here is that the consideration was paid only for the phone minutes and not for the sweepstakes, which means there was no consideration paid by those participating in the sweepstakes. The second reason the court gave was that consumers might receive free game pieces without purchasing the pre-paid phone card via written request. This, the appellate court held, was evidence that some consumers were actually purchasing the phone card for its use rather than writing to the company for a free sweepstakes card. In finding that the phone cards were not gambling the appellate court wrote that "we hold the price paid for and the value received from the pre-paid phone cards is sufficiently commensurate to support the

determination that the sale of the product is not a mere subterfuge to engage in an illegal lottery scheme, whereby consideration is paid merely to engage in a game of chance." In Alabama, a circuit court judge held in a trial that a sweepstakes promotion at a racetrack was legal and was not a lottery. *Jefferson County Racing Association, Inc. vs. Mike Hale*, No. CV 05-7684 JSC, Circuit Court of Jefferson County, Alabama, January 31, 2006. In that case the sweepstakes was a promotion similar to the phone card promotion here. In fact the court in its decision cited the opinion of the Alabama Attorney general, Op. Att'y Gen. 99 28 (1998) that opined that the phone card was legal and was not a lottery. The opinion of the Alabama Attorney General stated that "because the program allows for the free distribution of game chances through a mail in option" there was no element of consideration and thus was not a prohibited lottery. The Alabama decision has been appealed to the Alabama Supreme Court. The Mississippi Supreme Court held that the phone card itself, which in that case was not dispensed by a machine, was not a lottery under Mississippi law. In *Mississippi Gaming Commission v. Treasured Arts, Inc.*, 669 So.2d 936 (Miss. 1997) the court held that the phone card was not a lottery because there was no proof that the amount paid for the telephone card was more than the retail price of the telephone time. The common thread in these jurisdictions is that the amount paid for the telephone card must not be more than the retail price of the telephone time and that there must be free "chances" readily available. After reviewing this case law, the Honolulu Liquor Commission found that these phone card machines should be allowed in licensed establishments. Although after these were approved an issue was raised about the "prize pool" of each machine pursuant to an expert opinion of William Holmes (a former FBI agent hired by the Honolulu Liquor Commission), this invalidated only those machines that did not use a single prize pool.

4

6.     Description of Sweepstakes Promotion and Terminals Proposed by Petitioners.

Petitioners request approval of the installation in the licensed premises of an electronic terminal that sells discount coupons to help promote the products sold by Products Direct, LLC.  This terminal, which has been approved for use in several other jurisdictions, most notably South Carolina and Ohio, operates as follows:

a.     The sweepstakes terminal describes the promotion and the sweepstakes rules on the screen,

b.     The customer walks up to the terminal, and inserts paper money into the bill acceptor.

c.     The terminal prints out a discount coupon that is worth twice the value of the amount of money inserted into the terminal subject to a cap of 30% off of the consumer product(s) to be purchased from Products Direct.

d.     The customer can go online and redeem the coupon at the www.redeemsite.com in connection with the purchase of consumer product(s) offered by Products Direct.

e.     In connection with the purchase of the discount coupon, the customer receives free entries into the sweepstakes. The customer can play one of eight games to reveal whether he has won anything or he can instantly find out by selecting the "Reveal Instant Winners" button. Thus, the customer is not required to play the games to see if he has won.

f.     Instead of purchasing a discount coupon, a customer can enter the sweepstakes without a purchase. A customer can follow the instructions on the terminal screen (or the posted written rules) and write in for a free entry code. Upon receipt of the

5

free entry code, the customer must return to the exact same terminal, which the "request for a free entry code" was made, and type in the code to redeem his or her "free entries. This requirement ensures that the customer's entries come from the "same pool" which he/she had requested the free entry. Upon entering the code, the customer receives 100 free entries to play the sweepstakes.

7.    <u>Further Description of Terminal and Procedures.</u>  The games contained in the terminal include poker, keno, and bingo.  The games are NOT connected to the sweepstakes and as noted above, playing the games are not a prerequisite to see if a customer has won the sweepstakes.  If a customer wins cash in the sweepstakes, he may receive that cash from the store clerk.  What is important is that the terminal will not permit the customer to replay his winnings (i.e., there is no "free play feature"). The only way to obtain additional entries is to purchase additional discount coupons.

8.    Attached hereto as Exhibit "2" is a true and correct copy of the Products Direct Sweepstakes™ Rules, as developed by the manufacturer of the machines.

9.    Attached hereto as Exhibit "3" is a true and correct copy of an opinion letter from The Gearhiser Law Firm, Inc., an Ohio law firm, giving the opinion that these machines are legal and do not constitute gambling under Ohio law.

10.    Attached hereto as Exhibit "4" is a true and correct copy of an opinion letter from Moore, Taylor & Thomas, P.A., a law firm in South Carolina, giving the opinion that these machines are legal and do not constitute gambling under South Carolina law.

11.    Attached hereto as Exhibit "5" is a true and correct copy of a decision by a magistrate in South Carolina ruling that the specific machines that Petitioner PJY proposes to distribute in Hawaii are legal in South Carolina and do not constitute gambling.

12.   <u>Legality of Products Direct Terminals.</u>  The question simply put is whether the terminals offered by Products Direct, that offer winnings solely based upon an electronic sweepstakes and not based upon any outcome of any game, are legal under Hawaii law.  Hawaii law defines "gambling" as where a person "stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome."  Sec.712-1220(4), H.R.S.  The statute thus requires three essential elements: (a) that a person risks something of value, (b) that the contest is a game of chance and (c) that the person receives something of value in the event of a certain outcome, or, put quite simply, consideration, chance and reward.  If any one of these three elements is missing then the activity does not constitute gambling.  Because a sweepstakes game, the type of game found in the form of the "Monopoly"™ game at McDonald's, gives free entries, it is not considered to be gambling.  There is no consideration paid for the entry as free entries are available if the customer writes to the company.  In this case, that is also the case.  The customer is purchasing discount coupons for the money, and based upon the purchase of those discount coupons is entered into the sweepstakes.  Unlike the phone card, but much like the McDonald's promotion, the Products Direct sweepstakes offers a product, (i.e., discount coupons), that is directly related to what the manufacturer sells.  In this case Products Direct sells consumer products on line and thus the discount coupons are directly tied in.  As stated in the South Carolina decision, there is no purchase payment, entry fee, or proof of purchase that is required as a condition of entering the game promotion or receiving a prize. As set forth in the sweepstakes rules which are on the terminal screen and in writing posted at the terminal site, a customer may enter the sweepstakes without a purchase by sending a written request to Products Direct.  Again, it is important to

emphasize that Products Direct offers the products that it promotes in the sale of the discount coupons. Thus the product promoted is strongly related to the product that the customer is purchasing. This differs from the phone cards where there is no promotion of any product as part of the sweepstakes, but simply the sale of a phone card, which is totally unrelated to the promoter of the sweepstakes.

13.     Petitioners assert that the Products Direct Sweepstakes Promotion and terminals described above are legal, and do not violate the gambling laws of the State of Hawaii. This Commission should, therefore, approve this promotion and the installation of these terminals in the premises of a liquor licensee. Because of the potential for abuse by others, this ruling should be strictly limited to the Products Direct Sweepstakes promotion and the terminals described herein.

14.     Exhibit "6" attached hereto are letters from the licensee requesting that the machine be installed on their premises.

DATED: Honolulu, Hawaii, April 21, 2011.

_____
KEITH M. KIUCHI

Attorney for Petitioner PJY ENTERPRISES, LLC
and GDFT, LLC, DBA KANPAI BAR AND
GRILL

**LIQUOR COMMISSION**
**CITY AND COUNTY OF HONOLULU**

711 KAPIOLANI BOULEVARD, SUITE 600  HONOLULU, HAWAII 96813-5249  PHONE (808) 523-4458  FAX (808) 591-2700
INTERNET ADDRESS:  www.honolulu.gov/liq
E-MAIL:  liquor@honolulu.gov  •  TOLL-FREE PHONE: 1-800-838-9976 (select "4")



MUFI HANNEMANN
MAYOR

DENNIS ENOMOTO
CHAIRMAN

DANNY KIM
VICE CHAIR

IRIS R. OKAWA
COMMISSIONER

JON F. YAMAGUCHI
COMMISSIONER

ANNA C. HIRAI
ACTING ADMINISTRATOR

January 31, 2006

Keith Kiuchi, Esq.
Suite 2525, Pauahi Tower
1001 Bishop Street
Honolulu, Hawaii 96813

Dear Mr. Kiuchi:

Re:   Request to Use Phone Cards Only In Premises
GER, INC., dba CAFE BRONCO
1549 Colburn Street, Honolulu, Hawaii 96817
Dispenser General License No. E0228

At its hearing on January 26, 2006, the use of only **Phone Cards** within your licensed premise is hereby **APPROVED** by the Liquor Commission under the conditions stated in your request. This approval is based upon the information and conditions stated in your request. Accordingly, you must notify us immediately of any changes, which may require resubmission of your request.

If you have any questions, please contact Administrative Services Officer Daniel Arakaki at 527-5302.

Sincerely,

ANNA C. HIRAI
Acting Administrator

ACH:nf

**EXHIBIT** 1


**LIQUOR COMMISSION**
**CITY AND COUNTY OF HONOLULU**
711 KAPIOLANI BOULEVARD, SUITE 600  HONOLULU, HAWAII  96813-5249  PHONE (808) 523-4458  FAX (808) 591-2700
INTERNET ADDRESS:   www.honolulu.gov/liq
E-MAIL:  liquor@honolulu.gov   *  TOLL-FREE PHONE: 1-800-838-9976 (select "4")



MUFI HANNEMANN
MAYOR

DENNIS ENOMOTO
CHAIR

DANNY KIM
CO-VICE CHAIR

IRIS R. OKAWA
CO-VICE CHAIR

JON F. YAMAGUCHI
COMMISSIONER

DEWEY H. KIM, JR.
ADMINISTRATOR

April 17, 2006

Keith M. Kiuchi, Esq.
Kiuchi & Nakamoto
1001 Bishop Street, Pauahi Tower, #2525
Honolulu, Hawaii  96813

Dear Mr. Kiuchi:

Re:   JOINT REQUEST OF GER, INC. dba CAFE BRONCO
AND KP-AMUSEMENTS, LLC
1549 Colburn Street, Honolulu, Hawaii 96817
Joint Request to install "CALL ME" and "THE SEA IS CALLING"
Master Phone Calling Vending Machines by Tecknik Mfg.

At its hearing on April 13, 2006, the Liquor Commission **APPROVED** your request to install the following vending machines:  "Call Me" and "The Sea is Calling", manufactured by Tecknik Mfg., Inc.  This approval is based upon the information and conditions stated in your request.  Accordingly, you must notify us immediately of any changes.

If you have any questions, please call Administrative Services Officer Daniel Arakaki at (808) 527-5302.

Sincerely,

DEWEY H. KIM, JR.
Administrator

DHKJ:dm

# Products Direct Sweepstakes™ Rules
## NO PURCHASE NECESSARY
## PURCHASE WILL NOT IMPROVE CHANCES OF WINNING

**Promotion Description:** The sweepstakes is designed to promote and advertise consumer products sold by Products Direct, LLC. The website to order products is www.redeemsite.com. No purchase, payment, entry fee or proof of purchase is required as a condition of entering the sweepstakes or receiving a prize. A purchase will not improve the chances of winning. The promotion begins December 1, 2010 and ends on November 30, 2012.

**Eligibility:** The sweepstakes is only open to individuals who are eighteen years of age or older. Void where prohibited by law. The sweepstakes is subject to all applicable federal, state and local laws and regulations. Employees of Products Direct, LLC and its affiliates are not eligible to win. The purchase of a product from Products Direct, LLC does not automatically enter the purchaser in the sweepstakes.

**How to Enter with Purchase of Discount Coupon:** Free promotional entries accompany the purchase of a discount coupon which coupon may be applied toward the purchase of consumer products sold by Products Direct, LLC. You cannot purchase entries directly. The discount coupons may be dispensed by the sweepstakes terminal or by an attendant from a point of sale terminal. Entries also may be obtained without a purchase as described below. The sweepstakes does not differentiate between entries received in connection with a purchase of a coupon and those received by mail without a purchase.

**No Purchase Method of Entry:** To receive free promotional entries (equivalent to a $1.00 purchase of discount coupons) by mail, you must obtain a request code from the game screen by pressing the "Primary Sweepstakes Rules" button and then the "Display Free Entry Request Code" button. After viewing the code, you must hand write on a three inch by five inch (3x5) index card the following information: (i) the request code; (ii) the location of the sweepstakes terminal (name of the retail sponsor's establishment, city and state); and (iii) your name, age, street address, city, state, zip code and telephone number. You must mail the index card to Products Direct, LLC, P.O. Box 496, Norcross, GA 30071. Each 3x5 card must be mailed in its own separate outer envelope (i.e., limit one request code per envelope). The address on the envelope to Products Direct, LLC must be handwritten and you may not use a postage meter or other mechanical device to affix the postage on the envelope. Incomplete, incorrect, illegible, lost, misdirected or damaged requests for a free entry request code are invalid. Please allow up to four weeks to receive your redeem code. To use the redeem code, you must return to the same sweepstakes terminal from which the request code was obtained. You must press the "Enter

Free Entry Redeem Code" button on the screen and enter your redeem code on the pop-up key pad.

**Prizes, Games and Odds of Winning:** Only cash prizes are available. Not every entry will win a prize. You may instantly reveal your entries, or play a fun game, to see if you have won a prize. Each sweepstakes terminal has several different games to play and each game may be played at various levels (i.e., groups of entries). The prizes for each level and the instant reveal option may be different. Please refer to the rules screen in each game regarding the details of that game and total amount of prizes and winners available in a fully loaded game. The odds of winning will depend on the game selected and the level selected.

**To Claim a Prize:** Cash prizes must be redeemed at the retail location where the sweepstakes terminal is located and must be redeemed before you leave the premises. All prize winnings are subject to verification. Prizes are not transferable and no substitution of prizes is permitted. Prizes awarded from malfunction are not valid. Any discrepancy regarding the authenticity of prize winnings shall be decided by the retail location sponsor and all decisions are final. The promotional entries have no cash value. Prize winners may be required to show proof of eligibility.

**Taxes:** All federal, state, and local taxes on prizes are the sole responsibility of the winner.

**Changes to the Games:** The sponsors reserve the right to change, modify and update the games contained in the sweepstakes terminal without notice. The sponsors may terminate or invalidate entries or prizes if misconduct or technical difficulties destroy, corrupt or otherwise affect the integrity of the game.

**Limitation of Liability:** To the extent permitted by law, entrants by participating in the sweepstakes agree that Products Direct, LLC and the retail sponsor and their respective officers, directors, employees, representatives and agents shall have no liability and shall be held harmless by entrants for any injury, damage, loss or liability to person or property, due in whole or part, directly or indirectly, by reason of the acceptance, possession, use or misuse of prizes or participation in the sweepstakes. **To the extent permitted by law, entrants hereby waive all rights to claim punitive, incidental and consequential damages and any other damages other than for actual out-of-pocket costs.**

©2010 Products Direct, LLC  All rights reserved.

# EXHIBIT 2

# THE GEARHISER LAW FIRM, INC.

### Attorney at Law
Kurt O. Gearhiser

520 East Rich Street, Columbus  OH 43215-5318
(614)221-5151  (614)221-1778  FAX

February 28, 2011

Products Direct, LLC
P O Box 496
Norcross  GA  30071

RE:   **Product Promotion/Sweepstakes**

Dear General Manager:

I'm writing this letter pursuant to your request to review your product promotion sweepstakes. I have reviewed your computerized sweepstakes revealer terminals, the manufacturer's information and promotional material, reviewed R C Chapter 2915 and several Liquor Control Commission Regulations. It is my opinion as outlined below that your product promotion sweepstakes does not violate the gambling statutes or administrative regulations of Ohio. I will focus on the legal analysis of your product promotion sweepstakes and the applicable laws and administrative regulations.

Your product promotion sweepstakes has a defined starting and ending date, and your sweepstakes terminal platform contains sixty five (65) separate sweepstakes. The amount of winning and losing entries in each sweepstakes are determined prior to the start of each sweepstakes.  The terminals are simply an entertaining way to reveal winning entries and to reveal the prize associated with the entry.

It is my understanding that the sweepstakes terminals may offer various forms of merchandise, food, phone time, coupons and/or services for sale. It is my opinion that the cost of each item offered for sale must be reasonable and also comparable to the cost at other locations. The appropriate sales tax shall be charged if the product sold is taxable.

It is my belief that you have structured the promotions/sweepstakes in a similar fashion to well known promotions/sweepstakes such as soft drinks with a prize located under the cap, candy with a prize written on the inside of the wrapper or gasoline stations which provide promotional game pieces with the sale of gasoline. Products Direct is interested in increasing the sale of specific products or services at its website www.redeemsite.com and desires a product promotion sweepstakes to accomplish this.

Ohio currently has no laws which regulate sweepstakes. Until the legislature acts your company should make sure that the sales activity does not violate any of the Ohio gambling laws. Ohio's gambling statutes have been amended several times in the past seven years to create new definitions, although as I stated above sweepstakes have not yet

**EXHIBIT 3**

been defined. When the legislature fails to define an activity one must make sure that the activity cannot be defined as an illegal activity. Therefore your sweepstakes promotions should go to great lengths to avoid falling into the definition of gambling. The elements of gambling are prize, consideration, chance and profit.

Consumers who wish to participate in the sweepstakes may enter the sweepstakes either by receiving free entries in connection with the purchase of the promotional products or by requesting free entries. You must identify and define how a free entry is to be provided to a person who requests one. Consumers who purchase the promotional products may choose to participate in the sweepstakes by using the entries and playing the computerized sweepstakes revealer terminal. The sweepstakes does not differentiate between entries granted through a purchase from those granted by request with no purchase necessary. All promotional entries, whether received with or without a purchase, have the same chance of winning the prizes.

Your sweepstakes has a computerized method for revealing whether or not a particular sweepstakes entry is a winner. A participant may access a computerized sweepstakes revealer terminal which uses entertaining video game themes to reveal the participant's awarded prize amount. The entries can be revealed one at a time through the entertaining game terminals or all of the entries can be revealed at one time.

Ohio Revised Code 2915.01 provides important definitions which need to be reviewed. The following definitions are relevant to our analysis of the legality of the computer terminals.

- Gambling" – No person shall do any of the following:
  Engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking: (2) Establish, promote, or operate or knowingly engage in conduct that facilitates any game of chance conducted for profit or any scheme of chance; (3) Knowingly procure, transmit, exchange, or engage in conduct that facilitates the procurement, transmission, or exchange of information for use in establishing odds or determining winners in connection with bookmaking or with any game of chance conducted for profit or any scheme of chance; (4) Engage in betting or in playing any scheme or game of chance as a substantial source of income or livelihood; (5) With purpose to violate division (A)(1), (2), (3), or (4) of this section, acquire, possess, control, or operate any gambling device.

- "Scheme of Chance" – a slot machine, lottery, numbers game, pool conducted for profit, or other scheme in which a participant gives a valuable consideration for a chance to win a prize, but does not include bingo, a skill-based amusement machine or a pool not conducted for profit.

- "Game of Chance" – poker, craps, roulette, or other game in which a player gives anything of value in the hope of gain, the outcome of which is determined largely by chance, but does not include bingo.

- "Gambling Device" – means any of the following:

  (1) A book, totalizer, or other equipment for recording bets; (2) A ticket, token, or other device representing a chance, share, or interest in a scheme of chance or evidencing a bet; (3) A deck of cards, dice, gaming table, roulette wheel, slot machine, or other apparatus designed for use in connection with a game of chance; (4) Any equipment, device, apparatus, or paraphernalia specially designed for gambling purposes; (5) Bingo supplies sold or otherwise provided, or used, in violation of this chapter.

Ohio's definition of gambling focuses on the element of chance that is present in games or schemes of chance. Moreover, Ohio law also contemplates gambling to include the giving of consideration or something of value in order to participate in a game or scheme of chance. An illegal lottery in Ohio is a promotion or contest where participants pay valuable consideration for the chance to win a prize.

Participants in the sweepstakes are not required to provide consideration or give anything of value to participate in the sweepstakes. Like all commercial sweepstakes marketed to consumers, the sweepstakes provides a free entry option whereby participants can receive sweepstakes entries without making a purchase. Because sweepstakes' participants are not required to provide anything of value to participate your product promotion sweepstakes should not be considered an illegal lottery under Ohio law.

The definitions of a game of chance and a scheme of chance each have the same two elements: (1) the payment of consideration or anything of value to participate, and (2) the outcome of the game or promotion must be determined largely by chance. The sweepstakes do not require a participant to give any consideration or anything of value in order to participate since the entries may be obtained for free. Therefore the sweepstakes do not qualify as "games of chance" or "schemes of chance" under Ohio law.

I reviewed Liquor Control Commission Regulations as well as the Ohio Revised Code because some of the sweepstakes promotions may be used at liquor permit establishments. Establishments authorized to sell alcoholic beverages are prohibited from: "having, harboring, keeping, exhibiting, possessing, employing, or allowing to be kept, exhibited, or used in, upon or about the premises of the permit holder of any gambling device as defined in Division (F) of section 2915.01 of the Revised Code which is or has been used for any gambling in violation of Chapter 2915 of the Revised Code." (OAC 4301:1-1-53(B)) Therefore, this language mirrors ORC 2915.02, et. sequence but does not place any additional regulatory burden on a permit premises that does not exist off a permit premises.

Ohio law allows certain promotions or contests to be conducted in connection with the sale of alcoholic beverages under specific circumstances. A permit holder may sponsor or conduct upon the permit premises promotional games or contests which are neither games nor schemes of chance and which do not constitute gambling or public gaming, provided that: (1) the promotion or contest does not require the participant to pay money

3

or something of value other than visiting the premises for the privilege or opportunity to participate in such promotions or contests or for receiving the award or prize therefrom; and (2) alcoholic beverages are not an element of such a game or contest either directly or indirectly; and (3) the game or contest is sponsored or designed and run by a permit holder who is licensed for the sale of alcoholic beverages, a manufacturer whose main product line is not alcoholic beverages or their advertising agent or representative. *See* OAC 4301:1-1-53(F).

Your sweepstakes promotion meets the criteria outline in the Ohio Administrative Code for promotional contests conducted on the premises of an establishment that sells alcohol because: (1) the sweepstakes does not require participants to pay money or anything of value to participate; (2) alcoholic beverages are not a direct or indirect element of the sweepstakes, and (3) the manufacturer does not have main product lines which are alcoholic beverages. Therefore, nothing would prohibit an establishment that sells alcohol under an Ohio liquor permit from keeping, displaying and allowing its customers to use terminals on the liquor permit premises.

It is important to review past decisions as we consider this matter. One of the first cases to discuss sweepstakes was *Kroger v. Cook*, 1970, 24 Ohio St. 2d 17 which declared a promotional sweepstakes program in violation of the former Liquor Control Commission Regulation 5301:1-1-53. Originally promotional sweepstakes were illegal because of language contained in former Regulation 4301:1-1-53. However Ohio now allows for promotional games such as the one you have decided to operate. Regulation 53 specifically allows promotional games or contests which are neither games nor schemes of chance and which do not constitute gambling or public gaming. Therefore your promotional sweepstakes would not violate Regulation 53 as long as the promotion does not require the participants to pay money or something of value for the privilege to participate, alcoholic beverages are not an element of the game and the manufacturer's main product line is not alcoholic beverages.

In 1985 the Ohio Attorney General had the chance to review promotional sweepstakes. OAG 85-001 authorized the sale of sports programs even though contained in the program was a sweepstakes and therefore a chance to win a prize. The key to the opinion was that the purchaser of the product did not pay "valuable consideration for either an admission to the ballpark or sports program in order to obtain a chance to win a prize". Since no instant bingo ticket, seal card, punchboard or other gambling device was used in the sports program promotion, the Attorney General opined that it could not have been considered bingo or instant bingo nor was it a violation of the gambling laws. A similar opinion was issued by the Attorney General in OAG 85-013.

I have also reviewed Liquor Control Commission Regulations 4301:1-1-44 and 4301:1-1-45. Regulation 44 involves advertising and it does not appear that the sale of your product would violate any sections of Regulation 44. Regulation 45 is a ban on premium and gift merchandising but is contingent upon the purchase of alcoholic beverages. This regulation prohibits receiving a prize at the point of sale but the regulation was written to apply only to a manufacturer or supplier of alcoholic beverages.

4

Therefore Regulation 45 should not affect your sale of promotional products. However an expansive reading of Regulation 45(E) might somehow prohibit all point of sale prize awards. No one has ever interpreted Regulation 45 like that and I would think such an expansive reading would be challenged by the distributors of point of sale prizes. This type of viewpoint would make every sweepstakes in grocery stores, convenient stores and gasoline stations illegal. Therefore it does not appear that either Regulation 44 or 45 prohibits your type of product promotion.

By reviewing the definitions of game of chance and scheme of chance it is readily apparent that whether or not a violation of R C 2915.02 et. sequence occurs will be a fact based case by case determination. The courts and Ohio Attorneys General have reviewed whether the purchaser gave a valuable consideration for the chance to win a prize. Past attempts with horoscope cards, coupons cards, etc. showed virtually no usage meaning the purchasers were never interested in the cards, only the instant bingo part of the card. However your promotional part of the sweepstakes would only be an encouragement to buy the product just as the Attorney General opined in OAG 85-001. One should think of the Monopoly promotion at McDonalds. Purchasers are buying the product and also playing the sweepstakes. The promotions are done to increase sales and profits for the retailer even though millions of dollars in cash and merchandise are being awarded as sweepstakes prizes.

Sweepstakes promotions have become quite popular in Ohio in the past year. Fortunately one court recently wrote a lengthy opinion concerning sweepstakes. In *State of Ohio V. Dabish* (2009), unreported, Lucas County Municipal Court Case No. CRB-08-25138 Judge Gorman reviewed R C 2915.02 and .03 as they related to a sweepstakes promotion operation in Toledo, Ohio. The location sold phone cards. The court found that the sale of phone cards meant that no consideration was present and there was no violation of R C 2915.02 and .03. A legitimate product was being sold at a reasonable and customary price

I have provided you with a copy of the Attorney General Opinions, court decisions and pertinent statutes and regulations. It certainly appears that the trend is to allow promotional games/sweepstakes so long as the purchaser is buying a legitimate consumer product or service at a reasonable price with the intent to use that item

Promotional sales programs and sweepstakes are on hundreds of products in retail stores throughout Ohio. McDonalds, gas stations, newspapers and countless other businesses offer product promotions to induce the consumer to buy more of their products. Your product promotion appears consistent with these national sweepstakes. Therefore it is my opinion that your product promotions sweepstakes would not violate R C 2915.02 or 2915.03 or any administrative regulations.

Respectfully

Kurt O. Gearhiser

5



S. JAHUE MOORE
J. MARK TAYLOR*
DAVID L. THOMAS†
C. VANCE STRICKLIN, JR.
JAMES EDWARD BRADLEY
SHEILA McNAIR ROBINSON
ROBERT D. HAZEL
CHRISTIAN G. SPRADLEY*†
C. DAVID SAWYER, JR.††
WILLIAM H. EDWARDS
STANLEY L. MYERS
JANE H. DOWNEY**
S. JAHUE MOORE, JR.

MELISSA K. MOORE
WILLIAM B. FORTINO
R. NICHOLS "NICK" RILEY, JR.
JONATHAN M. GOODE

RETIRED:
BILLY C. COLEMAN*†

††SALUDA OFFICE
(864) 445-4544 OR (866) 604-4544
†GREENVILLE OFFICE
(864) 271-6371

1700 SUNSET BOULEVARD (HWY 378)
POST OFFICE BOX 5709
WEST COLUMBIA, SOUTH CAROLINA 29171
TELEPHONE (803) 796-9160
FAX (803) 791-8410

January 12, 2011

Products Direct, LLC
P.O. Box 496
Norcross, GA 30071
Attention: Manager

RE:    Legal Analysis of Products Direct Sweepstakes™ in South Carolina

Dear Manager:

You have asked for our legal opinion as to whether your recently developed Products Direct Sweepstakes promotion, which promotion utilizes video games of chance, may be legally operated in the State of South Carolina. Set forth below is a description of the Products Direct Sweepstakes promotion and an analysis of the promotion in relation to sweepstakes law in the State of South Carolina. The description is based upon our discussions and your written description of a sweepstakes terminal with various games contained therein.

## I.    DESCRIPTION OF THE PROMOTION

A.    Background. Products Direct, LLC, a Georgia limited liability company ("PD"), desires to promote and advertise the sale of consumer products offered for sale through PD's website located at www.redeemsite.com. In order to jump start sales and increase awareness of its website, PD has decided to run a sweepstakes promotion involving the sale of discount coupons. The coupons can be purchased from a sweepstakes terminal or from a cashier at a point of sale terminal. The sweepstakes terminals and point of sale terminals will be operated by owners of retail establishments located in various states. The operators will manage the retail location, dispense the coupons (if not dispensed by the game itself) collect money from the sale of the coupons and pay out cash prizes. Amounts remaining after the payout of cash prizes are retained by the owner of the sweepstakes terminals and shared with the operator. As described above, PD intends to make money from the sale of consumer products. The holder of a coupon may redeem the coupon in connection with a purchase using PD's website. Each coupon will have an expiration date and a code to be used when ordering products.

* Fellow of the American Academy of Matrimonial Lawyers
** Certified Specialist in Bankruptcy & Debtor Creditor Law

**EXHIBIT 4**

January 12, 2011
Products Direct, LLC
Re: Legal Analysis of Products Direct Sweepstakes™ in South Carolina
Page 2 of 6

---

B. **Sweepstakes Entries, Prizes and Coupons.** Free entries in the sweepstakes accompany the purchase of the coupon. Also, free entries can be obtained without a purchase as described in the Products Direct Sweepstakes rules, a copy of which is attached hereto. The minimum coupon purchase is $1.00. Upon the purchase of a $1.00 coupon or redemption of the free entry code, the participant receives 100 entries (four plays at 25 entries each). Participants may purchase coupons at dollar values above $1.00 in $1.00 increments. To instantly reveal the entries or play a game, the participant uses the screen on the sweepstakes terminal. The participant may choose to instantly reveal his entries to see if he has won a prize. Or, the participant can play a fun and entertaining game with his entries to see if he has won a prize. Generally, there are eight games to choose from as shown on the game screen, and each game may be played at various play rates (i.e., groups of entries). The games include, but are not limited to, poker, keno and bingo. The prizes for each play rate and the instant reveal option may be different. However, the odds of winning are the same regardless of the method of entry. On the game screen, a participant can view the total amount of prizes available in a fully loaded game and the total number of winners for a fully loaded game. The odds of winning may depend on the game selected and the play rate selected.

If a participant has won a prize, he may collect his cash prize from the retail operator. In addition, the participant may redeem his or her coupons in connection with the purchase of consumer products. The coupons provide a 30% discount up to a maximum dollar amount which is twice the amount paid for the coupon with an overall maximum discount of $1,000 per coupon. The promotion runs from December 1, 2010 through November 30, 2012 and the coupons may be used up to 90 days after the promotion ends.

## II.   APPLICABLE LAW

A. **South Carolina Statutes.** South Carolina has long prohibited gambling. Title 16, Chapter 19 of the South Carolina Code criminalizes participating in, and establishing lotteries. In 1999, the South Carolina legislature implemented a ban on video gambling devices which supplemented the general prohibition on gambling by authorizing the seizure of certain categories of machines regardless of their intended use. The crux of the ban is contained in Section 12-21-2710 of the South Carolina tax code and reads as follows:

SECTION 12-21-2710. Types of machines and devices prohibited by law; penalties.
It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, or any video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value, or other device operated by a slot in which is deposited a coin or thing of value for the play of poker, blackjack, keno, lotto, bingo, or craps, or any machine or device licensed pursuant to Section 12-21-2720 and used for gambling or any punch board, pull board, or other device pertaining to games of chance of whatever name or kind, including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which

January 12, 2011
Products Direct, LLC
Re: <u>Legal Analysis of Products Direct Sweepstakes™ in South Carolina</u>
Page 3 of 6

deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine, but the provisions of this section do not extend to coin-operated nonpayout pin tables, in-line pin games, or to automatic weighing, measuring, musical, and vending machines which are constructed as to give a certain uniform and fair return in value for each coin deposited and in which there is no element of chance.

Any person violating the provisions of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than five hundred dollars or imprisoned for a period of not more than one year, or both.

Section 12-21-2710 establishes a three-layered approach to prohibiting currency-activated gambling devices. First, the statute bans any machine which plays the specific games of poker, blackjack, keno, lotto, bingo or craps. Second, the statute bans any device licensed for use in South Carolina but which has been *used for gambling*. Third, the statute prohibits any game pertaining to a game of chance including those machines, boards or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine. Assuming the games contained in the sweepstakes terminal are games of chance, Section 12-21-2710 would likely prohibit those games absent an exception.

However, there is an exception to Section 12-21-2710 that is found in S.C. Code Ann. Section 61-4-580(3). That section reads in part as follows:

SECTION 61-4-580. Prohibited acts.
No holder of a permit authorizing the sale of beer or wine or a servant, agent, or employee of the permittee may knowingly commit any of the following acts upon the licensed premises covered by the holder's permit:
(3) permit gambling or games of chance <u>except</u> game promotions including contests, games of chance, or sweepstakes in which the elements of chance and prize are present and which comply with the following:
(a) the game promotion is conducted or offered in connection with the sale, promotion, or advertisement of a consumer product or service, or to enhance the brand or image of a supplier of consumer products or services;
(b) no purchase payment, entry fee, or proof of purchase is required as a condition of entering the game promotion or receiving a prize; and
(c) all materials advertising the game promotion clearly disclose that no purchase or payment is necessary to enter and provide details on the free method of participation. (underline added).

B.   <u>Legitimacy Under SC Case Law</u>. Although not specified in 61-4-580(3), there is one additional requirement under SC law. According to the SC Supreme Court, the sweepstakes promotion must be "legitimate." In <u>Sun Light Prepaid Phonecard Co. v. State of South Carolina</u> (600 S.E.2d 61, 360 S.C. 49 (2004)), the SC Supreme Court declined to find prepaid phone cards legal under 61-4-580(3) "...because the game pieces are not a legitimate promotion or

January 12, 2011
Products Direct, LLC
Re: Legal Analysis of Products Direct Sweepstakes™ in South Carolina
Page 4 of 6

sweepstakes." The court did not explain in detail what is meant by "legitimate." In a footnote discussing the difference between vending machines and the phone card dispensers, the court said: "The main difference between the dispensers and vending machines is that the vending machines dispense promotional game products that are legitimate because their companies are attempting to promote the sale of those products. The phone card dispensers, on the other hand, do not issue game pieces that are part of a legitimate promotion or sweepstakes. The product being sold to consumers is not the long distance phone service but a game of chance." Looking at the Sun Light case, the following items may have contributed to a finding of illegitimacy:

- The long distance service was valid for only six months from the time the first phone card pin number was used, even though the sweepstakes promotion was set to run for 22 months.
- There were no records kept of the phone time used or what pin numbers had been sold via the cards.
- Some stores contained more than one phone card dispenser.
- There were contracts to sell 117,360,000 phone cards per year in South Carolina, but the population at the time was only about 3,000,000 people. No marketing studies had been done to determine whether there would be such a high demand for phone cards.
- The phone company from which the long distance service was purchased could not legally provide intrastate service in South Carolina because it did not have a license.

### III.   LEGAL ANALYSIS

To fall within the exception under 61-4-580(3), the Products Direct Sweepstakes promotion must be conducted (i) only in locations that possess a permit authorizing the sale of beer or wine, (ii) in connection with the promotion and advertisement of PD's products or to enhance PD's brand or image, (iii) so that no purchase is required as a condition of entering the sweepstakes or receiving a prize, and (iv) all materials advertising the sweepstakes clearly disclose that no purchase or payment is necessary to enter and provide details on the no purchase method of participation. Since most of these requirements fall on the operator, it is important that PD relay the above information to the operators. Also, the operators must display the rules of the sweepstakes.

With regard to item (iv) in the preceding paragraph, each operator must be careful to include the proper language in all materials advertising the sweepstakes. The proper language can be found in the Products Direct Sweepstakes rules. Specifically, the following language must be clearly and conspicuously displayed: "NO PURCHASE NECESSARY" and "PURCHASE WILL NOT IMPROVE CHANCES OF WINNING". Also, the materials must explain the no purchase method of participation as set forth in the Products Direct Sweepstakes rules under the paragraph entitled "No Purchase Method of Entry".

January 12, 2011
Products Direct, LLC
Re: <u>Legal Analysis of Products Direct Sweepstakes™ in South Carolina</u>
Page 5 of 6

With regard to the legitimacy requirement, it is important to avoid similarities with the prepaid phone cards in the <u>Sun Light</u> case. As represented to us, the following steps have been, or will be, taken:

1.  The sweepstakes promotion has a start date and an end date (i.e., December 1, 2010 through November 30, 2012).
2.  The expiration date on the coupon extends beyond the end of the promotion for a period of 90 days.
3.  PD will keep accurate records of the number of coupons issued to consumers (to the extent possible) and the number of coupons redeemed for the purchase of consumer products.
4.  PD will obtain a business license and a sales tax number and will maintain sufficient personnel to promote and sell the products.
5.  The discount coupons and PD's prices have been set so that the consumer is getting true value from the coupon relative to purchasing equivalent products from other sources and taking into consideration the price paid for the coupon.
6.  The games contain graphics designed to entice the participants to purchase PD's products.
7.  In addition to the Products Direct Sweepstakes, PD will market the consumer products in other ways.
8.  The sweepstakes rules will appear on the game screen.
9.  PD will respond promptly to requests for free entry codes.

In addition, the operators must do or should do, as the case may be, the following:

A.  The operators must have the proper beer or wine permit, business license, and tax licenses (e.g., see Section 12-21-2720 of the SC tax code).
B.  The operators should promote PD's products at their retail locations.
C.  The operators should prominently display the sweepstakes rules, either on the game machine or on the wall, or both.
D.  Each operator must be careful to include the proper language in all materials, if any, advertising the sweepstakes. Specifically, the following language (or language substantially similar thereto) must be clearly and conspicuously displayed. "NO PURCHASE NECESSARY" and "PURCHASE WILL NOT IMPROVE CHANCES OF WINNING". Also, such materials must explain the no purchase method of participation as set forth in the Products Direct Sweepstakes rules under the paragraph entitled "No Purchase Method of Entry".
E.  The sweepstakes terminals should contain only the most recent version of the game software provided by the manufacturer and must not contain other games.
F.  The operators should follow the applicable federal and state tax withholding requirements, if any, with regard to large cash prizes.

January 12, 2011
Products Direct, LLC
Re: Legal Analysis of Products Direct Sweepstakes™ in South Carolina
Page 6 of 6

---

## IV.    CONCLUSION

If PD can generate sales and the items outlined in this letter are followed, we believe Products Direct Sweepstakes™ promotion will be a legitimate promotion which may be operated in South Carolina.

Please note that opinions of counsel, such as this analysis and the opinion expressed herein, are not binding on the courts or administrative agencies. This analysis should not be viewed as a guarantee of the conclusion that a court or agency would reach if called upon to rule on the legal status of the promotion. Video gaming continues to operate in an unstable regulatory and legal environment. Consequently, enforcement activity by state or federal agencies, including SLED, and various courts may adversely affect the legal status of the promotion regardless of the analysis and opinion expressed in this letter. This analysis and opinion applies to the Products Direct Sweepstakes promotion only when it is conducted as described herein.

This is a privileged and confidential communication rendered to advise you alone and may not be relied upon by any other parties in any manner whatsoever. Should anyone other than you desire an analysis and legal opinion as to the promotion's legality, such party must consult their own counsel.

Yours very truly,

S. Janue Moore

04/07/2011 16 22 FAX  864277      MAILSOLUTIONS                    ☐001/005

State of South Carolina          )
County of Greenville             )          IN THE MAGISTRATE'S COURT
                                 )
STATE OF SOUTH CAROLINA          )
                                 )
         v.                      )          **ORDER**
                                 )
PLAY 4 FUN, INC. (Sweepstakes    )
  Terminal No. 0399)             )

---

## BACKGROUND

This machine was seized pursuant to S.C. Code Section 12-21-2712 and brought before this Court for a determination of whether it violates Section 12-21-2710 or any other law of the State. A hearing was held on March 30, 2011 and the parties submitted written submissions and exhibits.

Play 4 Fun, Inc. is the owner of the sweepstakes terminal no. 0399. Play 4 Fun placed the terminal in a retail establishment in Greenville County, SC for the purpose of conducting a sweepstakes promotion with Products Direct, LLC. Products Direct sells a variety of consumer products via its website at www.redeemsite.com. In order to jump start sales and increase awareness of its website, Products Direct is running a sweepstakes promotion involving the sale of discount coupons. The sweepstakes promotion uses a video terminal that dispenses the coupons and contains the sweepstakes games. The sweepstakes promotion operates as follows:

    a. The sweepstakes terminal describes the promotion and the sweepstakes rules on the screen.
    b. The customer walks up to the terminal, which is located in an establishment that has a beer or wine permit, and inserts paper money into the bill acceptor.
    c. The terminal prints out a discount coupon that is worth twice the value of the amount of money inserted into the terminal subject to a cap of 30% off of the consumer product(s) to be purchased from Products Direct.
    d. The customer can go online and redeem the coupon at www.redeemsite.com in connection with the purchase of consumer product(s) offered by Products Direct.
    e. In connection with the purchase of the discount coupon, the customer receives free entries into the sweepstakes. The customer can play one of eight games to reveal whether he has won anything or he can instantly find out by selecting the "Reveal Instant Winners" button. Thus, the customer is not required to play the games to see if he has won.

1



04/07/2011 16:22 FAX 86427   MAILSOLUTIONS   ⊠002/005

f.  Instead of purchasing a discount coupon, a customer can enter the sweepstakes without a purchase. A customer can follow the instructions on the terminal screen (or the posted written rules) and write in for a free entry code. Upon receipt of the free entry code, the customer may return to that terminal and enter the code. Upon entering the code, the customer receives 100 free entries to play the sweepstakes.

g.  The games contained in the terminal include poker, keno, and bingo.

h.  If a customer wins cash in the sweepstakes, he may receive that cash from the store clerk.

i.  The terminal will not permit the customer to replay his winnings (i.e., there is no "free play feature"). The only way to obtain additional entries is to purchase additional discount coupons.

In 1999, the South Carolina legislature implemented a ban on video gambling devices and authorized the seizure of certain categories of machines. The crux of the ban is contained in Section 12-21-2710 of the South Carolina tax code and reads as follows:

SECTION 12-21-2710. Types of machines and devices prohibited by law; penalties.
It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, or any video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value, or other device operated by a slot in which is deposited a coin or thing of value for the play of poker, blackjack, keno, lotto, bingo, or craps, or any machine or device licensed pursuant to Section 12-21-2720 and used for gambling or any punch board, pull board, or other device pertaining to games of chance of whatever name or kind, including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine, but the provisions of this section do not extend to coin-operated nonpayout pin tables, in-line pin games, or to automatic weighing, measuring, musical, and vending machines which are constructed as to give a certain uniform and fair return in value for each coin deposited and in which there is no element of chance.
Any person violating the provisions of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than five hundred dollars or imprisoned for a period of not more than one year, or both.

Since the games contained in the sweepstakes terminal are games of chance, Section 12-21-2710 would likely prohibit those games absent an exception. Play 4 Fun / Products Direct argue that there is an exception to Section 12-21-2710 that is found in S.C. Code Section 61-4-580(3). That section reads in part as follows:

SECTION 61-4-580. Prohibited acts.

No holder of a permit authorizing the sale of beer or wine or a servant, agent, or employee of the permittee may knowingly commit any of the following acts upon the licensed premises covered by the holder's permit:

[]

(3) permit gambling or games of chance **except** game promotions including contests, games of chance, or sweepstakes in which the elements of chance and prize are present and which comply with the following:

(a) the game promotion is conducted or offered in connection with the sale, promotion, or advertisement of a consumer product or service, or to enhance the brand or image of a supplier of consumer products or services;

(b) no purchase payment, entry fee, or proof of purchase is required as a condition of entering the game promotion or receiving a prize; and

(c) all materials advertising the game promotion clearly disclose that no purchase or payment is necessary to enter and provide details on the free method of participation. (underline and bold added).

4) permit lewd, immoral, or improper entertainment, conduct, or practices. This includes, but is not limited to, entertainment, conduct, or practices where a person is in a state of undress so as to expose the human male or female genitals, pubic area, or buttocks cavity with less than a full opaque covering;

(5) permit any act, the commission of which tends to create a public nuisance or which constitutes a crime under the laws of this State; or

(6) sell, offer for sale, or possess any beverage or alcoholic liquors the sale or possession of which is prohibited on the licensed premises under the law of this State; or

(7) conduct, operate, organize, promote, advertise, run, or participate in a "drinking contest" or "drinking game". For purposes of this item, "drinking contest" or "drinking game" includes, but is not limited to, a contest, game, event, or other endeavor which encourages or promotes the consumption of beer or wine by participants at extraordinary speed or in increased quantities or in more potent form. "Drinking contest" or "drinking game" does not include a contest, game, event, or endeavor in which beer or wine is not used or consumed by participants as part of the contest, game, event, or endeavor, but instead is used solely as a reward or prize. Selling beer or wine in the regular course of business is not considered a violation of this section.

A violation of any provision of this section is a ground for the revocation or suspension of the holder's permit.

The State argues that Section 61-4-580(3) does not provide an exception and that Sections 12-21-2710 and 61-4-580(5) authorize the State to seize and destroy the terminal.

## FINDINGS OF FACT

I find that the Play 4 Fun / Products Direct Sweepstakes promotion and the specific terminal used in the promotion comply with the requirements of Section 61-4-580(3) for the following reasons:

3

1. The location at which the seized sweepstakes terminal was placed has a permit authorizing the sale of beer or wine.

2. The promotion is conducted or offered in connection with the sale of discount coupons for the purchase of consumer products and to enhance the brand or image of Products Direct.

3. No purchase payment, entry fee, or proof of purchase is required as a condition of entering the game promotion or receiving a prize. As set forth in the sweepstakes rules which are on the terminal screen and in writing posted on the terminal, a customer may enter the sweepstakes without a purchase by sending a written request to Products Direct at the mailing address provided for free entries.

4. All materials advertising the Products Direct promotion clearly disclose that no purchase or payment is necessary to enter and provide details about the free method of participation.

### FINDINGS OF LAW

The Court holds that Section 61-4-580(3) is an exception to 12-21-2710. The Court also holds that the operation of this particular sweepstakes promotion under the particular circumstances described above is legal under South Carolina law:

1. It is well settled that statutes dealing with the same subject matter must be construed together and if possible produce harmonious result. Joiner ex rel. Rivas v. Rivas. Reading both statutes side by side leads me to the conclusion that 61-4-580(3) is an exception to 12-21-2710.

2. In Denman v. Columbia, the S.C. Supreme Court said that a more specific statute like 61-4-580(3) should be considered an exception to a more general statute like 12-21-2710.

3. Section 61-4-580(3) became law in 1999. Section 12-21-2710 became law in 2000. This later statute does not contain a direct reference to the earlier one. There is nothing to suggest that the later statute repealed the earlier one.

4. In the Sun Light Prepaid Phonecard Co. case, Justice Pleicones, in his dissenting opinion, specifically referred to Section 61-4-580(3) as an "exception" to Section 12-21-2710. Justice Pieper, in his dissenting opinion, agreed with Justice Pleicones' interpretation of the two statutes. The majority opinion did not specifically refer to 61-4-580(3) as an

4

04/07/2011 16:23 FAX 88427  MAILSOLUTIONS  ☑ 005/005

"exception", but it did so by implication by finding that this code section did not apply to the facts of the case on appeal. Later in 2010, the S.C. Supreme Court in <u>Ward v. West Oil Co.</u> discussed the <u>Sun Light</u> case and stated that the "...phone cards were not <u>exempt</u> under section 61-4-580 of the South Carolina Code." (underline added). It did not say that subsection (3) was not an exception.

5.  Finally, based upon the exhibits provided by Play 4 Fun from the Products Direct website, it appears that the purchaser of the discount coupon receives real value for it. For example, if a customer inserts a $10.00 bill, the customer receives a discount coupon worth $20.00 which can be used toward the purchase of an item sold on www.redeemsite.com.

Conclusion:  The Court finds that (i) all of the requirements of Section 61-4-580(3) have been met in this case, and (ii) the operation of this one specific sweepstakes promotion, under the limited circumstances described above, is legal under South Carolina law. Thus, seizure and destruction of this terminal is not authorized.

This decision is not an endorsement of video poker. This decision should not be interpreted as allowing games of chance to be played in general. This decision should not be interpreted as allowing sweepstakes rooms to operate, i.e. it does not allow sweepstakes promotions to operate as the primary business of an establishment. To the contrary, this decision is specifically limited to the operations of the particular sweepstakes terminal in question in conjunction with Play 4 Fun / Products Direct.

It is so Ordered.

Magistrate Charles R. Garrett

April _7_, 2011

5

To:   The Honolulu Liquor Commission
      711 Kapiolani Boulevard, Suite 600
      Honolulu, Hawaii  96813-5249


From: GDFT, LLC
      DBA: Kanpai Bar and Grill
      Address:  404 Ward Avenue
      Honolulu, Hawaii  96814

      Dispenser General Liquor License Number: R0411


To Whom It May Concern,

We are hereby respectfully requesting approval and permission for the placement
and use of the Products Directs Sweepstakes Terminals described in our
accompanying Petition .


Sincerely,

Nadja Yamasaki

Owner/Licensee


# EXHIBIT 6