**EXHIBIT "22"**

RE: Analysis of petition on behalf of Products Direct.

1. Introduction

Products Direct uses its machines to provide individuals with a method for 1) entering into their cash sweepstakes in which winners are chosen at random and receive cash, and 2) buying coupons which can be used to obtain discounts for the purchase of items on their website. These coupons are really just discount tickets. If a person buys $50 worth of coupons, she receives 50 entries into the sweepstakes and $100 dollars' worth of discounts on the Products Direct website. This discount money can only be applied up to 30% of any single purchase, meaning if a person buys a $10 item, she pays 7 dollars out of her own pocket after applying her 30% worth of discount money. Further, if a person buys coupons, their sweepstakes entries occur automatically, and that person may then learn if they have won anything by either playing one of four games notoriously associated with gambling or by pressing a "Reveal Instant Winners" button to see if he has won anything in the sweepstakes. Thus, the experience a person will typically have when using this machine is one where he puts cash in, plays a computerized gambling game (slots, video poker, keno, or bingo), and then wins cash if he won in the sweepstakes, or walks away with some coupons for the Products Direct website. A person may if he so desires skip the game portion of the machine, but as noted below, will be penalized for doing so.

2. The "free" method of entry into the sweepstakes is not really free, and is so difficult to use that buying in is the only feasible option, making the sweepstakes a lottery.

HRS Section 712-1220(6) defines "lottery" as

...a gambling scheme in which (a) the players pay or agree to pay something of value for chances...one or more of which chances are to be designated the winning ones, and (b) the winning chances are to be determined by a drawing or by some other method based on an element of chance, and (c) the holders of the winning chances are to receive something of value.

Sections (b) and (c) are obviously met, but Products Direct claims that (a) is not met because it provides an alternative, free method of entry into their sweepstakes: A person can write in and obtain entry into their sweepstakes for free. Upon first glance, this would appear to circumvent our lottery law. But after a closer inspection, it is clear that the free option is prohibitively more difficult to exercise than simply buying the coupons at the machine.

The Products Direct Sweepstakes Rules provide that to enter without purchase, a person must, for each $1.00 entrance value, a person must obtain a "request code" from the game screen at the terminal, hand-write on a 3-by-5 inch index card the request code, the location of the sweepstakes terminal used to obtain the request code, and the applicant's name, age, telephone number, and full street address. The applicant must then send this index card to Products Direct in Georgia and <u>pay for shipping</u>. Four weeks later, the applicant receives in the mail a "redeem code" which the applicant must take back to the exact same machine that it



used to obtain the "request code" and enter the redeem code into the terminal. This process must be repeated for each $1.00 entry into the sweepstakes separately, meaning a separate postage stamp must be used and the entire process must be repeated. Thus, to use the "free" method of entry, a person must actually pay .42 cents per each ticket entry, which is valued at $1.00. Therefore, a person who wants to buy 100 entries into the sweepstakes has two options. First, she could gain immediate and automatic entry into the sweepstakes by simply buying $100 worth of coupons that would grant $200 worth of discounts on the Products Direct shopping website. Alternatively, she can obtain 100 entry codes, hand-write the required information on 100 index cards, spend $42 on stamps, wait four weeks for new codes, return to the exact same machine, and enter all of the codes individually.

Products Direct could argue that shipping costs are simply an incidental and necessary cost through which is obtains no profit. Acceptance of that argument would ignore the fact that shipping costs and the extreme inconvenience required is easily avoidable and unnecessary. Products Direct uses a request code obtained from the machine and a redeem code delivered upon presentation of the request code. Shipping costs could be easily avoided by simply providing the redeem code in the first place, eliminating the entire cumbersome and troubling mailing process, or by providing an online method of presenting the request code and obtaining the redeem code. Further, there is no legitimate reason to require separate envelopes for multiple entries for the same individual other than to increase the burden and cost of "free" entry. The fact is that Products Direct uses a costly and extremely inconvenient method for "free" entry so that nobody will ever actually use it. The only feasible method to enter into their sweepstakes is by simply purchasing their coupons, making this "sweepstakes" a lottery scheme in violation of HRS Sections 712-1220(6) and 712-1222(1). Even "free" entry costs .42 cents on every dollar, requiring the staking or risking of a person's personal wealth for entry into the sweepstakes, in violation of HRS Section 712-1220(4).

### 3. The machines promote gambling by providing greater prizes through the use of poker, slots, keno, or bingo.

Products Direct claims that its machine does not promote gambling because a person can bypass the gaming portion of the experience with the "Reveal Instant Winners" button. This claim is meant to imply that it does not matter whether the person plays the game or not, the outcome will be the same. Upon close inspection of the rules provided, however, it becomes clear that this is not the case. Under "Prizes, Games, and Odds of Winning, the Products Direct Sweepstakes Rules provides the following:

> You may instantly reveal your entries, or play a fun game, to see if you have won a prize. Each sweepstakes terminal has several different games to play and each game may be played at various levels (i.e. groups of entries). The prizes for each level and the instant reveal option may be different. Please refer to the rules screen in each game regarding the details of that game and the total amount of prizes and winners available in a fully loaded game. The odds of winning will depend on the game selected and the level selected.

The rules plainly demonstrate that playing the gambling game provides an opportunity to win different prizes than simply using the reveal instant winner button. Buying a larger number of entries and using them to increase one's "level" while playing a selected gambling game presumably provides an opportunity to win larger prizes, thereby encouraging both larger purchases of lottery tickets (coupons) and use of the gambling games (poker, slots, etc.). In this way, a person that uses the proposed machine falls under the HRS Section 712-1220(4) definition of gambling because he "stakes or risks something of value (his sweepstakes entries) upon the outcome of a contest of chance or a future contingent event not under his control or influence (the outcome of the gambling game chosen), upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome (greater prizes upon a win, no prizes upon a loss)." Even more clearly, the proposed machine violates HRS Section 712-1220(1), advance gambling activity, by materially aiding a form of gambling activity.

### 4. Conclusion

It is my opinion given the information I have been supplied, that the use of the proposed machines in the county of Kaua'i would violate our gambling laws in two distinct ways. First, the practical application of Products Directs' sweepstakes is a lottery by the definitions of HRS Section 712-1220(6) by requiring payment of value for chances in a chance-based selection medium the winner of which will receive cash prizes. Second, the machine itself promotes gambling by encouraging and rewarding the use of games of chance, primarily poker or slots in violation of HRS Section 712-1220(1) and (4).