**EXHIBIT "25"**



| | | |
|---|---|---|
| S JAHUE MOORE | **MOORE, TAYLOR & THOMAS, P.A.** | MELISSA K MOORE |
| T MARK TAYLOR* | | WILLIAM B TORTISO |
| DAVID L THOMAS† | | R NICHOLS "NICK" RILEY JR |
| C VANCE STRICKLIN, JR | | JONATHAN M GOODE |
| JAMES EDWARD BRADLEY | | |
| SHELIA MCNAIR ROBINSON | | RETIRED: |
| ROBERT D HAZEL | | BILLY C COLEMAN†† |
| CHRISTIAN G SPRADLEY †† | | |
| C DAVID SAWYER, JR ** | | |
| WILLIAM H EDWARDS | 1700 SUNSET BOULEVARD (HWY 378) | PS ALSO IN OFFICE |
| STANLEY L MYERS | POST OFFICE BOX 5709 | (864) 145-1544 OR (866) 664-4544 |
| JANE H DOWNEY** | WEST COLUMBIA, SOUTH CAROLINA 29171 | GREENVILLE OFFICE |
| S JAHUE MOORE, JR | TELEPHONE (803) 796-9160 | (864) 271-0371 |
| | FAX (803) 791-8410 | |

January 12, 2011

Products Direct, LLC
P.O. Box 496
Norcross, GA 30071
Attention: Manager

RE: Legal Analysis of Products Direct Sweepstakes™ in South Carolina

Dear Manager:

You have asked for our legal opinion as to whether your recently developed Products Direct Sweepstakes promotion, which promotion utilizes video games of chance, may be legally operated in the State of South Carolina. Set forth below is a description of the Products Direct Sweepstakes promotion and an analysis of the promotion in relation to sweepstakes law in the State of South Carolina. The description is based upon our discussions and your written description of a sweepstakes terminal with various games contained therein.

## I. DESCRIPTION OF THE PROMOTION

A. **Background**. Products Direct, LLC, a Georgia limited liability company ("PD"), desires to promote and advertise the sale of consumer products offered for sale through PD's website located at www.redeemsite.com. In order to jump start sales and increase awareness of its website, PD has decided to run a sweepstakes promotion involving the sale of discount coupons. The coupons can be purchased from a sweepstakes terminal or from a cashier at a point of sale terminal. The sweepstakes terminals and point of sale terminals will be operated by owners of retail establishments located in various states. The operators will manage the retail location, dispense the coupons (if not dispensed by the game itself) collect money from the sale of the coupons and pay out cash prizes. Amounts remaining after the payout of cash prizes are retained by the owner of the sweepstakes terminals and shared with the operator. As described above, PD intends to make money from the sale of consumer products. The holder of a coupon may redeem the coupon in connection with a purchase using PD's website. Each coupon will have an expiration date and a code to be used when ordering products.



**EXHIBIT 25**

January 12, 2011
Products Direct, LLC
Re: Legal Analysis of Products Direct Sweepstakes™ in South Carolina
Page 2 of 6

---

B. **Sweepstakes Entries, Prizes and Coupons.** Free entries in the sweepstakes accompany the purchase of the coupon. Also, free entries can be obtained without a purchase as described in the Products Direct Sweepstakes rules, a copy of which is attached hereto. The minimum coupon purchase is $1.00. Upon the purchase of a $1.00 coupon or redemption of the free entry code, the participant receives 100 entries (four plays at 25 entries each). Participants may purchase coupons at dollar values above $1.00 in $1.00 increments. To instantly reveal the entries or play a game, the participant uses the screen on the sweepstakes terminal. The participant may choose to instantly reveal his entries to see if he has won a prize. Or, the participant can play a fun and entertaining game with his entries to see if he has won a prize. Generally, there are eight games to choose from as shown on the game screen, and each game may be played at various play rates (i.e., groups of entries). The games include, but are not limited to, poker, keno and bingo. The prizes for each play rate and the instant reveal option may be different. However, the odds of winning are the same regardless of the method of entry. On the game screen, a participant can view the total amount of prizes available in a fully loaded game and the total number of winners for a fully loaded game. The odds of winning may depend on the game selected and the play rate selected.

If a participant has won a prize, he may collect his cash prize from the retail operator. In addition, the participant may redeem his or her coupons in connection with the purchase of consumer products. The coupons provide a 30% discount up to a maximum dollar amount which is twice the amount paid for the coupon with an overall maximum discount of $1,000 per coupon. The promotion runs from December 1, 2010 through November 30, 2012 and the coupons may be used up to 90 days after the promotion ends.

## II. APPLICABLE LAW

A. **South Carolina Statutes.** South Carolina has long prohibited gambling. Title 16, Chapter 19 of the South Carolina Code criminalizes participating in, and establishing lotteries. In 1999, the South Carolina legislature implemented a ban on video gambling devices which supplemented the general prohibition on gambling by authorizing the seizure of certain categories of machines regardless of their intended use. The crux of the ban is contained in Section 12-21-2710 of the South Carolina tax code and reads as follows:

> SECTION 12-21-2710. Types of machines and devices prohibited by law; penalties
> It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, or any video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value, or other device operated by a slot in which is deposited a coin or thing of value for the play of poker, blackjack, keno, lotto, bingo, or craps, or any machine or device licensed pursuant to Section 12-21-2720 and used for gambling or any punch board, pull board, or other device pertaining to games of chance of whatever name or kind, including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which

January 12, 2011
Products Direct, LLC
Re: <u>Legal Analysis of Products Direct Sweepstakes™ in South Carolina</u>
Page 3 of 6

deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine, but the provisions of this section do not extend to coin-operated nonpayout pin tables, in-line pin games, or to automatic weighing, measuring, musical, and vending machines which are constructed as to give a certain uniform and fair return in value for each coin deposited and in which there is no element of chance.
Any person violating the provisions of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than five hundred dollars or imprisoned for a period of not more than one year, or both.

Section 12-21-2710 establishes a three-layered approach to prohibiting currency-activated gambling devices. First, the statute bans any machine which plays the specific games of poker, blackjack, keno, lotto, bingo or craps. Second, the statute bans any device licensed for use in South Carolina but which has been *used for gambling*. Third, the statute prohibits any game pertaining to a game of chance including those machines, boards or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine. Assuming the games contained in the sweepstakes terminal are games of chance, Section 12-21-2710 would likely prohibit those games absent an exception.

However, there is an exception to Section 12-21-2710 that is found in S.C. Code Ann. Section 61-4-580(3). That section reads in part as follows:

SECTION 61-4-580. Prohibited acts.
No holder of a permit authorizing the sale of beer or wine or a servant, agent, or employee of the permittee may knowingly commit any of the following acts upon the licensed premises covered by the holder's permit:
(3) permit gambling or games of chance <u>except</u> game promotions including contests, games of chance, or sweepstakes in which the elements of chance and prize are present and which comply with the following:
(a) the game promotion is conducted or offered in connection with the sale, promotion, or advertisement of a consumer product or service, or to enhance the brand or image of a supplier of consumer products or services;
(b) no purchase payment, entry fee, or proof of purchase is required as a condition of entering the game promotion or receiving a prize; and
(c) all materials advertising the game promotion clearly disclose that no purchase or payment is necessary to enter and provide details on the free method of participation.
(underline added).

B.   <u>Legitimacy Under SC Case Law</u>.  Although not specified in 61-4-580(3), there is one additional requirement under SC law. According to the SC Supreme Court, the sweepstakes promotion must be "legitimate." In <u>Sun Light Prepaid Phonecard Co. v. State of South Carolina</u> (600 S.E.2d 61, 360 S.C. 49 (2004)), the SC Supreme Court declined to find prepaid phone cards legal under 61-4-580(3) "...because the game pieces are not a legitimate promotion or

January 12, 2011
Products Direct, LLC
Re: Legal Analysis of Products Direct Sweepstakes™ in South Carolina
Page 4 of 6

---

sweepstakes." The court did not explain in detail what is meant by "legitimate." In a footnote discussing the difference between vending machines and the phone card dispensers, the court said: "The main difference between the dispensers and vending machines is that the vending machines dispense promotional game products that are legitimate because their companies are attempting to promote the sale of those products. The phone card dispensers, on the other hand, do not issue game pieces that are part of a legitimate promotion or sweepstakes. The product being sold to consumers is not the long distance phone service but a game of chance." Looking at the Sun Light case, the following items may have contributed to a finding of illegitimacy:

- The long distance service was valid for only six months from the time the first phone card pin number was used, even though the sweepstakes promotion was set to run for 22 months.
- There were no records kept of the phone time used or what pin numbers had been sold via the cards.
- Some stores contained more than one phone card dispenser.
- There were contracts to sell 117,360,000 phone cards per year in South Carolina, but the population at the time was only about 3,000,000 people. No marketing studies had been done to determine whether there would be such a high demand for phone cards.
- The phone company from which the long distance service was purchased could not legally provide intrastate service in South Carolina because it did not have a license.

### III. LEGAL ANALYSIS

To fall within the exception under 61-4-580(3), the Products Direct Sweepstakes promotion must be conducted (i) only in locations that possess a permit authorizing the sale of beer or wine, (ii) in connection with the promotion and advertisement of PD's products or to enhance PD's brand or image, (iii) so that no purchase is required as a condition of entering the sweepstakes or receiving a prize, and (iv) all materials advertising the sweepstakes clearly disclose that no purchase or payment is necessary to enter and provide details on the no purchase method of participation. Since most of these requirements fall on the operator, it is important that PD relay the above information to the operators. Also, the operators must display the rules of the sweepstakes.

With regard to item (iv) in the preceding paragraph, each operator must be careful to include the proper language in all materials advertising the sweepstakes. The proper language can be found in the Products Direct Sweepstakes rules. Specifically, the following language must be clearly and conspicuously displayed: "NO PURCHASE NECESSARY" and "PURCHASE WILL NOT IMPROVE CHANCES OF WINNING". Also, the materials must explain the no purchase method of participation as set forth in the Products Direct Sweepstakes rules under the paragraph entitled "No Purchase Method of Entry."

January 12, 2011
Products Direct, LLC
Re: <u>Legal Analysis of Products Direct Sweepstakes™ in South Carolina</u>
Page 5 of 6

---

With regard to the legitimacy requirement, it is important to avoid similarities with the prepaid phone cards in the <u>Sun Light</u> case. As represented to us, the following steps have been, or will be, taken:

1. The sweepstakes promotion has a start date and an end date (i.e., December 1, 2010 through November 30, 2012).
2. The expiration date on the coupon extends beyond the end of the promotion for a period of 90 days.
3. PD will keep accurate records of the number of coupons issued to consumers (to the extent possible) and the number of coupons redeemed for the purchase of consumer products.
4. PD will obtain a business license and a sales tax number and will maintain sufficient personnel to promote and sell the products.
5. The discount coupons and PD's prices have been set so that the consumer is getting true value from the coupon relative to purchasing equivalent products from other sources and taking into consideration the price paid for the coupon.
6. The games contain graphics designed to entice the participants to purchase PD's products.
7. In addition to the Products Direct Sweepstakes, PD will market the consumer products in other ways.
8. The sweepstakes rules will appear on the game screen.
9. PD will respond promptly to requests for free entry codes.

In addition, the operators must do or should do, as the case may be, the following:

A. The operators must have the proper beer or wine permit, business license, and tax licenses (e.g., see Section 12-21-2720 of the SC tax code).
B. The operators should promote PD's products at their retail locations.
C. The operators should prominently display the sweepstakes rules, either on the game machine or on the wall, or both.
D. Each operator must be careful to include the proper language in all materials, if any, advertising the sweepstakes. Specifically, the following language (or language substantially similar thereto) must be clearly and conspicuously displayed "NO PURCHASE NECESSARY" and "PURCHASE WILL NOT IMPROVE CHANCES OF WINNING". Also, such materials must explain the no purchase method of participation as set forth in the Products Direct Sweepstakes rules under the paragraph entitled "No Purchase Method of Entry".
E. The sweepstakes terminals should contain only the most recent version of the game software provided by the manufacturer and must not contain other games.
F. The operators should follow the applicable federal and state tax withholding requirements, if any, with regard to large cash prizes.

January 12, 2011
Products Direct, LLC
Re: <u>Legal Analysis of Products Direct Sweepstakes™ in South Carolina</u>
Page 6 of 6

### IV. CONCLUSION

If PD can generate sales and the items outlined in this letter are followed, we believe Products Direct Sweepstakes™ promotion will be a legitimate promotion which may be operated in South Carolina.

Please note that opinions of counsel, such as this analysis and the opinion expressed herein, are not binding on the courts or administrative agencies. This analysis should not be viewed as a guarantee of the conclusion that a court or agency would reach if called upon to rule on the legal status of the promotion. Video gaming continues to operate in an unstable regulatory and legal environment. Consequently, enforcement activity by state or federal agencies, including SLED, and various courts may adversely affect the legal status of the promotion regardless of the analysis and opinion expressed in this letter. This analysis and opinion applies to the Products Direct Sweepstakes promotion only when it is conducted as described herein.

This is a privileged and confidential communication rendered to advise you alone and may not be relied upon by any other parties in any manner whatsoever. Should anyone other than you desire an analysis and legal opinion as to the promotion's legality, such party must consult their own counsel.

Yours very truly,

S/Janue Moore