**EXHIBIT "29"**



# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

February 20, 1997

Ms. Kim Kiplin
Acting Executive Director
Texas Lottery Commission
P.O. Box 16630
Austin, Texas 78761-6630

Letter Opinion No. 97-008

Re: Whether the offer for sale of a sweepstakes ticket combined with a long-distance telephone card constitutes an illegal lottery (ID# 39101)

Dear Ms. Kiplin:

You have requested our opinion regarding a particular promotional scheme currently being conducted in Texas. You ask whether the "Lucky Shamrock" sweepstakes constitutes a "lottery" as defined in section 47.01 of the Penal Code:[1]

> (7) "Lottery" means any scheme or procedure whereby one or more prizes are distributed by chance among persons who have paid or promised consideration for a chance to win anything of value, whether such scheme or procedure is called a pool, lottery, raffle, gift, gift enterprise, sale, policy game, or some other name.

The offense of "gambling promotion," a class A misdemeanor, occurs when a person "for gain, sets up or promotes any lottery or sells or offers to sell or knowingly possesses for transfer, or transfers any card, stub, ticket, check, or other device designed to serve as evidence of participation in any lottery." Penal Code § 47.03(5). Lucky Shamrock ("LS") cards are sold for one dollar each through dispensing machines, and otherwise, in combination with a Lucky Shamrock "emergency phone card." According to a brief filed on behalf of Lucky Shamrock:

> A patron wanting to purchase an LS Emergency Phone Card inserts a one dollar bill into the machine and, in return, receives a card good for one minute of long distance telephone time. Each card contains a 1-800 number to access the long distance network and a Personal Identification Number to validate the call. ...

---

[1] You also ask about the "E-Z Instant Game," a similar promotion that offers three minutes of long-distance time for two dollars. We do not have enough information about this game to consider it here, but we note that any general comments in this opinion should be construed to apply to both games.



EXHIBIT 29

Ms. Kim Kiplin - Page 2 (L097-008)

> In addition to receiving the long distance credit, and for no additional charge, the purchaser of the phone card gets to participate in the LS sweepstakes promotion. Each phone card contains a configuration of 9 symbols, winning combinations of which entitle the bearer to money prizes ranging in value from $1 to $1,000.[2] The symbols are also bar coded on the back of each phone card and are read by the dispensing machine after the phone card is purchased. After the card is dispensed, the dispenser pictures on the screen the same combination of symbols which are contained on the sweepstakes portion of the phone card. The customer can, therefore, determine whether the card contains a winning combination of symbols either by scratching or peeling off the covering of the phone card or by viewing the screen.

The commission, which is charged with the regulation of bingo under article 179d, V.T.C.S., is primarily concerned with the presence of the dispensing machines in places where bingo games are conducted. Subsection 11(k) of article 179d provides that "[a] game of chance other than bingo may not be conducted or allowed during an occasion when bingo is played." Furthermore, the Travis County District Attorney's office has expressed an interest in determining whether the Lucky Shamrock promotion, and others of a similar nature, might run afoul of section 47.03 of the Penal Code.

It is well established that "three things must concur to establish a thing as a lottery: (a) a prize or prizes; (b) the award or distribution of the prize or prizes by chance; [and] (c) the payment either directly or indirectly by the participants of a consideration for the right or privilege of participating." *Brice v. State*, 242 S.W.2d 433, 434 (Tex. Crim. App. 1951), quoting *Cole v. State*, 112 S.W.2d 725, 730 (Tex. Crim. App. 1937); *see also State v. Socony Mobil Oil Co., Inc.*, 386 S.W.2d 169 (Tex. Civ. App.--San Antonio 1964, writ ref'd n.r.e.). There is no question that the first two elements--the award of a *prize* by *chance*--are present in the Lucky Shamrock sweepstakes. The dispute centers on whether a purchaser of the "phone card" furnishes any amount of the one dollar consideration for the privilege of participating in the sweepstakes.

*For the present, we will presume that a customer's purchase of the one minute of long-distance telephone time represents a legitimate sale.* If such purchase is the sole means of entering the sweepstakes, however, a court will attribute a portion of the one dollar payment to consideration for participation in the sweepstakes. In order to

---

[2]The writer of the brief appears to be mistaken. The "Promotion Rules" attached as Exhibit D to Lucky Shamrock's brief indicate that the largest prize is $500. According to these rules, the "prizes/odds of winning" are as follows:

$1.00-(1 in 3.75); $5.00-(1 in 56); $10.00-(1 in 120); $25.00-(1 in 469); $50.00-(1 in 937.5); $100-(1 in 1875); $250-(1 in 7500); $500-(1 in 7500).

circumvent this result, a sweepstakes must provide an "alternative" means of entering the contest that does *not* require the payment of consideration, *and* it must treat "customers" and "non-customers" alike. *Socony Mobil*, 386 S.W.2d at 172-73. A number of cases and opinions have addressed this issue.

In *Brice*, a merchant awarded "prizes by chance to a registrant without requiring any registrant to be a customer or to purchase merchandise or to do other than to register without charge at the store." 242 S.W.2d at 435. The court found that the scheme was not a "lottery." The fact that the merchant "may receive a benefit from the drawing in the way of advertising" was not deemed sufficient to furnish the requisite element of consideration. *Id.* In *Socony Mobil*, the court held that, absent a showing of "any character of favoritism shown to customers," the lottery statute was not implicated. 386 S.W.2d at 172-73. Likewise, in Attorney General Opinion M-67, this office found that a "promotion[al] program" known as the "Texas Treasure Hunt" was not a lottery because "anyone" had "reasonable opportunity" to "participate without the necessity of purchase." Attorney General Opinion M-67 (1967) at 2.

On the other hand, in Attorney General Opinion V-1483, the attorney general considered a promotion called "Movie Sweepstakes," in which a game card was

> handed to all adults who care to pick one up at the theatre, whether he intends to buy a ticket or not. . . . It is understood that the reason for not giving out the forms at the time the patrons purchase a ticket is to eliminate the possibility that the money paid for the ticket also pays in part for the game card.

Attorney General Opinion V-1483 (1952) at 3-4. The attorney general said that "the question for . . . determination [was] whether the distribution of 'free' chances remove[d] the element of consideration from this plan." *Id.* at 5. In concluding that the scheme was a lottery, this office found that "a substantial portion of the chances for prizes were on the basis of the purchase of theater tickets," and that the "element [of consideration] is not removed by . . . a number of 'free' chances on request." *Id.* at 6. More significantly, the attorney general said that "the written description" of the contest "might differ materially from the manner in which it is actually carried out." *Id.*

Similarly, in Attorney General Opinion C-50, the attorney general addressed a promotion called "Lucky Car Night" held by a drive-in theater. Although the contest's

Ms. Kim Kiplin - Page 4                              (L097-008)

sponsors said that "free" entries were available on request, this office was not persuaded that such fact was sufficient to remove the scheme from the "lottery" ambit:

> Human nature is such that a person is not likely to drive out to the Buckhorn Drive-In Theater, get in a line of cars entering the theater, ask at the Box Office for a free card or cards, and then drive away while the patrons are buying tickets, obtaining their registration cards and entering the theater. It is true that under the plan, the registration cards are free upon request, but unless requested no registration card is given or offered to anyone unless they purchase a ticket to the show.
>
> Certainly the patron is favored over the non-patron since a registration card is given to the patron freely upon buying a theater ticket. However, the non-patron must go to the box office and request a registration card and suffer the embarrassment that naturally follows when he says he is not buying a ticket to the show.

Attorney General Opinion C-50 (1963) at 4-5. Even in one of the principal cases relied on by Lucky Shamrock, the court found that, in a promotion sponsored by Pepsi Cola, 25,000 game cards had been distributed "free" less than one month after the promotion began, and of that number, 252 winning cards had been redeemed. *Pepsi Cola Bottling Co. of Luverne, Inc. v. Coca-Cola Bottling Co., Andalusia*, 534 So.2d 295, 296 (Ala. 1988). The point is that, with regard to "alternative" means of entry, the contest's sponsor must ordinarily demonstrate that "free" entrants really do play and really do win.

The rules furnished by Lucky Shamrock provide:

> 1. NO PURCHASE NECESSARY. Obtain a Lucky Shamrock Sweepstakes Promotion game card with the purchase of any Lucky Shamrock Emergency Phone Card while supplies last. Obtain a free promotion game card, while supplies last, from the office of participating dealers or send a hand written, self-addressed return envelope along with a card bearing the words "Lucky Shamrock Phone Cards" and the Dispenser Number and Sweepstakes Number found on the side of the dispenser machine to Lucky Shamrock Emergency Phone Card, Post Office Box 80606, Austin, Texas 78708-0606.
>
> Limit of one per request to be received no later [than] 3/31/97. The Promotion begins on or about 9/1/96 and ends when supplies of Lucky Shamrock Sweepstakes Promotion game cards are exhausted,

Ms. Kim Kiplin - Page 5 (L097-008)

> but in no case later than 3/31/97. For problems or assistance, call 1-800-908-0605.[3] [Footnote added.]

The brief filed on behalf of Lucky Shamrock states that "if a retailer runs out of free cards, he can request more from LS." Brief from Clark, Thomas & Winters, ID# 39101 at 3 (Nov. 8, 1996) (copy in original AG file).

On their face, the rules for the Lucky Shamrock sweepstakes may appear to provide an "alternative" means of entry sufficient to remove the scheme from the purview of a prohibited "lottery," although perhaps not under the standards used by Attorney General Opinions V-1483 and C-50. But, as the attorney general noted in Attorney General Opinion V-1483, the "written description" of the contest "might differ materially from the manner in which it is actually carried out." Attorney General Opinion V-1483 (1952) at 6. There is no guarantee that a "free card" will be available from the merchant, as even the Lucky Shamrock brief seems to acknowledge by stating that "if a retailer runs out of free cards, he can request more." The rules themselves carry the disclaimer, "while supplies last," for free cards obtained both from the merchant and by mail.[4] Moreover, as the attorney general observed in Attorney General Opinion C-50, it may be that an entrant simply has to jump through too many hoops to obtain a "free" card. In this regard, the commission may consider whether the "mail" option of obtaining a "free" card provides a real alternative to the purchase of a phone card-sweepstakes ticket.[5]

While this office cannot make findings of fact in the opinion process, the Lottery Commission, with its staff or investigators and attorneys, is well positioned to do so. In determining whether the Lucky Shamrock sweepstakes furnishes a truly "alternative" means of entry that is really "free," the commission should consider, *inter alia*, how onerous such means appear on their face; whether "free" entries are in fact readily available; how many entrants have taken advantage of such means; and how many prizes have been awarded to "free" entries as compared to "paid" entries. The overriding issue is

---

[3] Brief from Clark, Thomas & Winters, (ID# 39101) "Lucky Shamrock Sweepstakes Promotion Rules," Exhibit D, Form AIA2 (Nov. 8, 1996). The rules also indicate that the contest is "void where prohibited by law."

[4] Although the rules also state that the "phone card" is available only "while supplies last," one might not perhaps be deemed a hopeless cynic in inferring that those "supplies," which are sold for one dollar rather than given away, will last somewhat longer than the "free" cards.

[5] In *Treasured Arts, Inc. v. The Mississippi Gaming Comm'n*, No. 95-443, Circuit Court of the First Judicial District of Hinds County, Mississippi, issued on January 9, 1996, the court approved a sale of three minute phone cards (for $2.00) coupled with a sweepstakes similar to, but rather more generous than (top prize: $50,000) that sponsored by Lucky Shamrock, where the only means of "free" entry consisted of sending a self-addressed stamped envelope to the contest's sponsor. That decision is on appeal to the Supreme Court of Mississippi.

whether "customers" and "non-customers" are treated equally in every respect. If "*any* character of favoritism" is shown to paying entrants, the scheme is a "lottery."

In order to avoid characterization as a "lottery," a promotional scheme must also involve the legitimate sale of a product. If a product of little or no value is being sold in conjunction with a sweepstakes ticket, the consideration may be deemed to have been paid for the privilege of entering the sweepstakes. In a recent decision, the attorney general of Virginia considered the sale of souvenir milk caps, known as "pogs," in combination with scratch-off lottery-like game tickets. Op. Va. Att'y Gen. (To Ms. Penolope W. Kyle, April 19, 1996) (1996 WL 384351). Although the presence of fact issues prevented the attorney general from reaching a definite conclusion, the opinion noted the possible significance of questions such as whether the pogs were "ever sold without the game cards attached," and facts such as the finding of state lottery investigators of "game cards in trash cans with the pogs still attached." *Id.* at 4. The relevance of such an inquiry to the Lucky Shamrock sweepstakes is enhanced by your assertion that Texas Lottery investigators have themselves discovered trash cans containing large numbers of Lucky Shamrock phone cards with the PIN numbers not scratched off, indicating that the cards were not used to place phone calls.

The commission might also inquire into the value of the tickets as legitimate "phone cards" by having its investigators attempt to place calls using the 800 and PIN numbers *printed on the cards. If placing a call proves impossible, or nearly so, in practice,* or if the customer does not in fact receive one minute in long-distance talk time, as the promotion advertises, the commission might well conclude that the "product" being sold by Lucky Shamrock is of little or no value, and that consideration is actually being paid for the opportunity to enter the sweepstakes.[6]

The manner in which the phone card-sweepstakes ticket is marketed to the public is also of relevance. In *G.A. Carney, Ltd. v. Brzeczek*, 453 N.E.2d 756, 760 (Ill. App. 1983), the court made this point, albeit rather inartfully:[7]

> The controlling fact in the determination of whether a given scheme is a lottery is determined by the nature of the appeal which

---

[6] If the transaction is determined to be a bad deal as a phone card, it might be noted that it's also a bad deal as a lottery: a chance of one in 7500 to win a top prize of $500 is somewhat less than Las Vegas odds. By contrast the Lotto Texas game conducted by the commission offers, for the same price, a one in approximately sixteen million chance to win at least four million dollars, a chance-to-winnings-comparison almost four times greater than that offered by Lucky Shamrock. To paraphrase an old saw, however, no one ever went broke underestimating the mathematical acumen of the public.

[7] "Inartfully" because the court probably meant to say that "the controlling fact in the determination of *whether the consideration attaches to the product rather than to the potential prize* is the nature of the appeal that the business makes to secure the patronage of its customers."

> the business makes to secure the patronage of its customers. If, as here, the controlling inducement is the lure of an uncertain prize, then the business is a lottery.

*Id.* at 760. You suggest that the "controlling inducement" in the Lucky Shamrock sweepstakes may be the lure of playing the slot-machine-like device that dispenses tickets:

> The ticket dispenser . . . is an upright machine with a slot for insertion of coins and bills and a video display screen. Upon purchase of a game ticket-phone card, the machine reads the unique bar code on the ticket-card and displays the numbers and symbols instantly showing the purchaser whether he has obtained a winning ticket and the amount of the prize, if any.

Such a situation was addressed in *Major Manufacturing Corp. v. Department of Revenue*, 651 A.2d 204, 208 (Pa. Comm. 1995), in which a Pennsylvania court held that a particular machine was not a mere "dispensing device." The court adopted the state's characterization of the machine:

> The Department contends that Major's device is an active machine and not a mere facilitator of ticket dispensing because it permits the player to watch the game being played, know that he has a winning ticket prior to opening the ticket and in fact, only use the ticket as a receipt for redemption. In other words, a player may rely on the video display and discard the losing ticket without ever opening it. In addition, also without opening the ticket, a player may alternatively rely on the device's electronic sound or its lights in determining whether he is a winner.

*Id.* at 208. The Lucky Shamrock game operates in a similar manner. The commission might well question the legitimate use of a video display terminal that provides the precise "instant winner" information that the customer may obtain merely by scratching off his ticket. In our opinion, the prominence given by the "dispensing device" to the "sweepstakes" portion of the transaction in comparison to the "phone card" portion is a factor that bears significantly on the determination of whether consideration is being paid for the phone card or for participation in the sweepstakes.

In summary, if the Lottery Commission finds, as a matter of fact, that "any character of favoritism" is shown to persons who pay for the phone-sweepstakes card in comparison to those who obtain sweepstakes tickets free of charge; that "free" entries are not in fact readily and conveniently available; that purchasers of the phone cards do not in fact regard them as having any value as phone cards; that the phone cards do not provide the service advertised; or that the "controlling inducement" to purchasing the phone card-sweepstakes ticket is the lure of playing the slot-machine-like dispensing device, we

believe the commission may reasonably determine that the one dollar consideration paid for a phone card-sweepstakes ticket in fact constitutes consideration for entering the sweepstakes. In such event, the commission may conclude that the scheme is a prohibited lottery under chapter 47 of the Penal Code.

You also ask whether the dispensing machine at issue here is a "gambling device" as defined in the Penal Code.[8] In Attorney General Opinion JM-368, this office considered whether a ticket-vending computer terminal, the PAT-2000, that was capable of dispensing out-of-state lottery tickets, was a "gambling device." The opinion concluded that the PAT-2000 was merely a dispensing device, because "the element of chance occurs in the lottery *drawing*, not in the transfer of a lottery ticket." Attorney General Opinion JM-368 (1965) at 2 (emphasis in original). Thus, the PAT-2000 was not a "gambling device *per se*." *Id.*

By contrast, the element of chance in the Lucky Shamrock sweepstakes is present in the dispensing machine itself. The machine, as well as the tickets it dispenses, contain all the essential information necessary to immediately determine whether a customer has won a prize. Thus, "the element of chance" occurs in the transfer of the phone card-sweepstakes ticket, rather than in some distant future drawing. We conclude that, if the commission determines that the Lucky Shamrock sweepstakes is a "lottery," the machine that dispenses the tickets is a "gambling device" under chapter 47 of the Penal Code.

---

[8]Section 47.01(4) defines "gambling device" as:

> any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance.

### SUMMARY

The Texas Lottery Commission may conclude that a sweepstakes conducted through the sale of a one-minute long-distance telephone card distributed primarily through slot-machine-like vending machines constitutes a prohibited "lottery" under chapter 47 of the Penal Code if it finds, as a matter of fact, that "any character of favoritism" is shown to persons who pay for the card as compared to those who obtain the sweepstakes tickets free of charge; that purchasers of the phone cards do not in fact regard them as having any value as phone cards; that the phone cards do not provide the service advertised; or that the "controlling inducement" to purchasing the phone card-sweepstakes ticket is the lure of operating the dispensing device. If the commission determines that the sweepstakes is a prohibited lottery, the machine that dispenses the tickets is a "gambling device" under chapter 47.

Yours very truly,

*Rick Gilpin*
Rick Gilpin
Deputy Chief
Opinion Committee