**EXHIBIT "32"**


--- S.E.2d ----, 2012 WL 695984 (N.C.App.)
(Cite as: 2012 WL 695984 (N.C.App.))

H
Only the Westlaw citation is currently available.

Court of Appeals of North Carolina.
HEST TECHNOLOGIES, INC. and International Internet Technologies, LLC, Plaintiffs
v.
STATE of North Carolina, ex rel. Beverly PURDUE, Governor, in her official capacity; North Carolina Department of Crime Control and Public Safety; Secretary of Crime Control and Public Safety Reuben Young, in his official capacity; Alcohol Law Enforcement Division; Director of Alcohol Enforcement Division John Ledford, in his official capacity, Defendants.

No. COA11–459.
March 6, 2012.

*1 Appeal by plaintiffs and defendants from order entered 30 November 2010 by Judge John O. Craig, III in Guilford County Superior Court. Heard in the Court of Appeals 25 October 2011.

Kilpatrick Townsend & Stockton LLP, by Adam H. Charnes, Richard S. Gottlieb, and Richard D. Dietz; Grace, Tisdale & Clifton, P.A., by Michael A. Grace and Christopher R. Clifton, for plaintiff International Intent Technologies, LLC.

Smith Moore Leatherwood LLP, by Richard A. Coughlin and Elizabeth B. Scherer, for plaintiff Hest Technologies, Inc.

Attorney General Roy Cooper, by Assistant Solicitor General John F. Maddrey and Special Deputy Attorney General Hal F. Askins, for defendants.

CALABRIA, Judge.
Both parties appeal the trial court's order which invalidated N.C. Gen.Stat. § 14–306.4(a)(3)(i) as unconstitutionally overbroad and upheld the constitutionality of the remainder of that statute. We affirm in part and reverse in part.

*I. Background*
Plaintiff **Hest Technologies**, Inc. ("Hest") is a Texas corporation authorized to transact business in North Carolina. Plaintiff International Internet Technologies, LLC ("IIT") is an Oklahoma corporation also authorized to transact business in North Carolina. Hest and IIT (collectively "plaintiffs") sell long-distance telephone time and high-speed internet service in internet cafes, business centers, convenience stores, and other retail establishments in North Carolina.

In addition, each plaintiff has developed their own proprietary sweepstakes management software. Plaintiffs use this software to conduct promotional sweepstakes as a means of marketing their products at the point of sale. When plaintiffs' customers make a qualifying purchase of plaintiffs' products, they receive one or more sweepstakes entries. Alternatively, individuals may enter plaintiffs' sweepstakes without purchasing any of plaintiffs' products by completing entry forms that are available at each retail location. Free entries are not treated any differently than entries accompanying a purchase.

The result of each sweepstakes entry has been predetermined by the sweepstakes software prior to disbursement. A player who has received a sweepstakes entry can only reveal this predetermined result by connecting to a computer terminal on which the sweepstakes software has been loaded. Once connected, the player has the option of either (1) choosing an "instant reveal," whereby the results of the sweepstakes entry are immediately displayed on a computer screen; or (2) having the results revealed through a video game played on the computer terminal. The method by which the result is revealed does not affect the outcome of the sweepstakes. Moreover, customers retain the value of the purchased prepaid phone or internet time, regardless of the outcome of the sweepstakes.

On 4 March 2008, plaintiffs initiated a declaratory judgment action against defendants in Guilford County Superior Court. Plaintiffs sought a declaration that its promotional sweepstakes did not violate any North Carolina gaming or gambling laws which were in effect at that time. Plaintiffs also sought injunctive relief to prevent defendants from attempting to enforce those laws against plaintiffs' sweepstakes

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

EXHIBIT 32

--- S.E.2d ----, 2012 WL 695984 (N.C.App.)
(Cite as: 2012 WL 695984 (N.C.App.))

systems. On 16 April 2008, the trial court temporarily enjoined defendants from any enforcement actions against plaintiffs. After the injunction was entered, plaintiffs continued to conduct their promotional sweepstakes.

*2 On 20 July 2010, the North Carolina General Assembly enacted House Bill 80. This legislation amended the North Carolina General Statutes to include a provision which prohibited conducting or promoting any sweepstakes which prohibited conducting or promoting any sweepstakes which utilized an "entertaining display." 2010 N.C. Sess. Laws 103 (codified as amended at N.C. Gen.Stat. § 14–306 .4 (2011)). Plaintiffs' sweepstakes systems fell squarely within the ambit of the new N.C. Gen.Stat. § 14–306.4.

In response to the enactment of House Bill 80, plaintiffs amended their original complaint to include an allegation that N.C. Gen.Stat. § 14–306.4 was, *inter alia,* an unconstitutional regulation of plaintiffs' protected First Amendment speech. On 11 October 2010, defendants filed a motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. Defendants' motion argued that N.C. Gen.Stat. § 14–306.4 was "constitutional in all respects" and that plaintiffs' sweepstakes operations were in violation of that law. On 5 November 2010, plaintiffs filed a motion for summary judgment on their First Amendment claims.

On 18 November 2010, the trial court conducted a hearing on the parties' respective motions. On 30 November 2010, the trial court entered an "Order and Final Judgment" which held that N.C. Gen.Stat. § 14–306.4(a)(3)(i) was unconstitutionally overbroad under the United States and North Carolina constitutions. In addition, the trial court upheld the constitutionality of the remainder of the statute and dissolved the preliminary injunction preventing enforcement of the gambling laws against owners and operators of plaintiffs' sweepstakes systems. Plaintiffs and defendants each appeal.

*II. Constitutionality of N.C. Gen.Stat. § 14–306.4*

Both parties contend that the trial court erred in assessing the constitutionality of N.C. Gen.Stat. § 14–306.4. Defendants argue that the trial court erred by concluding that N.C. Gen.Stat. § 14–306.4(a)(3)(i) was unconstitutionally overbroad. Plaintiffs, in turn, argue that the trial court erred by failing to conclude that the entire statute was unconstitutional. We agree with plaintiffs and conclude that the entirety of N.C. Gen.Stat. § 14–306.4 is an unconstitutionally overbroad regulation of free speech.

*A. Regulation of Speech*

Defendants first argue that N.C. Gen.Stat. § 14–306.4 does not implicate the First Amendment because it does not actually regulate any speech, protected or otherwise. Instead, defendants contend, and the dissent agrees, that the statute only regulates plaintiffs' conduct.[FN1]

> FN1. In determining that N.C. Gen.Stat. § 14–306.4 regulates only conduct, the dissent relies solely on a pair of orders by a single United States District Court judge, interpreting an ordinance in Seminole County, Florida. These orders are not binding upon this Court and we find them unpersuasive.

N.C. Gen.Stat. § 14–306.4 states, in relevant part:

> Notwithstanding any other provision of this Part, it shall be unlawful for any person to operate, or place into operation, an electronic machine or device to do either of the following:
>
> (1) Conduct a sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize.
>
> *3 (2) Promote a sweepstakes that is conducted through the use of an entertaining display, including the entry process or the reveal of a prize.

N.C. Gen.Stat. § 14–306.4(b) (2011). Defendants are correct that this statute attempts to regulate some conduct. Specifically, the statute attempts to regulate the use of an electronic machine or device in conjunction with a sweepstakes. However, the broad manner in which the statute attempts to regulate this conduct is problematic.

While it is true that plaintiffs are free to allow anyone to play their video games so long as the video games are not used to conduct or promote sweep-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.E.2d ----, 2012 WL 695984 (N.C.App.)
(Cite as: 2012 WL 695984 (N.C.App.))

stakes, it is equally true that plaintiffs remain free to conduct or promote sweepstakes so long as they do not involve the use of plaintiffs' video games. N.C. Gen.Stat. § 14-306.4 does not forbid the conducting or promotion of sweepstakes provided that the result of the sweepstakes entry is conveyed through any method other than an entertaining display. For example, if the sweepstakes conducted by plaintiffs were exactly the same in all respects, except that the results were conveyed by means of a scratch off ticket, a motion picture, a cartoon, or a simple verbal acknowledgment, the sweepstakes would be permitted by North Carolina law. Ultimately, North Carolina law permits players to learn the results of their sweepstakes entries by using the exact same computer terminals which display plaintiffs' video games, so long as the result is conveyed by words displayed on the monitor, rather than by an entertaining display. Thus, it is the specific method of disseminating sweepstakes results through an entertaining display that is criminalized by N.C. Gen.Stat. § 14-306.4.

The United States Supreme Court has stated that "the creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 131 S.Ct. 2653, 2667, 180 L.Ed.2d 544, 558 (2011). Moreover, that Court has also recently made clear that video games are entitled to full First Amendment protections:

> Like the protected books, plays, and movies that preceded them, video games communicate ideas—and even social messages—through many familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium (such as the player's interaction with the virtual world). That suffices to confer First Amendment protection.

*Brown v. Entm't Merchs. Ass'n*, 131 S.Ct. 2729, 2733, 180 L.Ed.2d 708, 714 (2011).

In light of these holdings, banning the dissemination of sweepstakes *results* through entertaining displays cannot be characterized as merely a regulation of conduct. Instead, that portion of N.C. Gen.Stat. § 14-306.4 which forbids "the reveal of a prize" by means of an entertaining display directly regulates protected speech under the First Amendment. This necessitates reviewing the statute under established First Amendment doctrine.

*B. Overbreadth*

*4 "A statute is overbroad if it sweeps within its ambit not solely activity that is subject to government control, but also includes within its prohibition the practice of a protected constitutional right." *State v. Arnold*, 147 N.C.App. 670, 675, 557 S.E.2d 119, 122 (2001)(internal quotations and citation omitted). In the instant case, N.C. Gen.Stat. § 14-306.4 prohibits plaintiffs from revealing sweepstakes results by means of an entertaining display, which the statute defines as "visual information, capable of being seen by a sweepstakes entrant, that takes the form of actual game play, or simulated game play...." N.C. Gen.Stat. § 14-306.4(a)(3) (2011). The statute also provides a list of examples of entertaining displays, which it notes are "by way of illustration and not exclusion." *Id.* These examples are:

a. A video poker game or any other kind of video playing card game.

b. A video bingo game.

c. A video craps game.

d. A video keno game.

e. A video lotto game.

f. Eight liner.

g. Pot-of-gold.

h. A video game based on or involving the random or chance matching of different pictures, words, numbers, or symbols not dependent on the skill or dexterity of the player.

i. Any other video game not dependent on skill or dexterity that is played while revealing a prize as the result of an entry into a sweepstakes.

*Id.* However, the examples listed in N.C. Gen.Stat. § 14-306(a)(3) do not limit the definition of entertaining display, and thus, the statute ultimately bans all "visual information. that takes the form of actual ... or simulated game play." This definition necessarily encompasses all forms of video games, from the simplest simulation to a much more com-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.E.2d ----, 2012 WL 695984 (N.C.App.)
(Cite as: 2012 WL 695984 (N.C.App.))

plex game requiring substantial amounts of interactive gameplay by the player, and thus, operates as a categorical ban on all video games for the purposes of communicating a sweepstakes result.[FN2] As a result, regardless of the types of games the General Assembly intended to regulate, the statute is constitutionally overbroad, as its plain language "sweeps within its ambit ... the practice of a protected constitutional right." Arnold, 147 N.C.App. at 675, 557 S.E.2d at 122.

> FN2. It is unnecessary to determine where plaintiffs' specific games would fall within this spectrum. For purposes of an overbreadth challenge, "the challenger has the right to argue the unconstitutionality of the law as to the rights of others, not just as the ordinance is applied to him." State v. Mello, 200 N.C.App. 561, 564, 684 S.E.2d 477, 480 (2009).

Accordingly, we hold that the portion of N.C. Gen.Stat. § 14–306 .4 which criminalizes the dissemination of a sweepstakes result through the use of an entertaining display must be declared void, as it is unconstitutionally overbroad. However, the trial court's order, which only invalidated N.C. Gen.Stat. § 14–306.1(a)(3)(i), was not sufficient to cure this constitutional defect. As previously noted, the examples in N.C. Gen.Stat. § 14–306.1(a)(3)(a)–(h), which the trial court upheld, do not place any limitations on the definition of an entertaining display, and it is this definition, when applied to the dissemination of a sweepstakes result, which is unconstitutionally overbroad. Consequently, the trial court erred by only invalidating the single example of an entertaining display contained in subsection (i). Instead, the entire statute must be invalidated.

### III. Conclusion

*5 N.C. Gen.Stat. § 14–306.4 regulates constitutionally protected speech. Specifically, the portion of the statute which forbids revealing a sweepstakes result by means of an entertaining display acts as a regulation of plaintiffs' right to communicate the results of otherwise lawful sweepstakes by means of a specific category of protected speech. While this Court has recognized, and we agree, that "[i]t is the legislature's prerogative to establish the conditions under which bingo, lotteries, or other games of chance are to be permitted," Animal Protection Society v. State of North Carolina, 95 N.C.App. 258, 269–70, 382 S.E.2d 801, 808 (1989), the portion of the statute at issue in the instant case regulates solely how a sweepstakes result is communicated, rather than the underlying circumstances under which the sweepstakes are permitted. The General Assembly cannot, under the guise of regulating sweepstakes, categorically forbid sweepstakes operators from conveying the results of otherwise legal sweepstakes in a constitutionally protected manner. N.C. Gen.Stat. § 14–306.1 is unconstitutionally overbroad in these circumstances and must be declared void. Consequently, the portion of the trial court's order which declared N.C. Gen.Stat. § 14.306.4(a)(3)(i) unconstitutional is affirmed; the remainder of the order is reversed.

Affirmed in part and reversed in part.

Judge McGEE concurs.
Judge HUNTER, ROBERT C. dissents by separate opinion.

HUNTER, ROBERT C., Judge, dissenting.
The majority concludes that N.C. Gen.Stat. § 14–306.4 (2011) regulates protected speech and is unconstitutionally overbroad. Because I conclude the statute regulates conduct rather than speech, I respectfully dissent.

Plaintiffs argue that N.C. Gen.Stat. § 14–306.4 violates the First Amendment of the United States Constitution because (1) it is a content-based restriction on protected expression that fails strict scrutiny; and (2) it is overbroad, in that it criminalizes a substantial number of video games that are unrelated to gambling. I disagree. I would reverse the trial court's order to the extent that it held N.C. Gen.Stat. § 14–306.4(a)(3)(i) is unconstitutional. I would affirm the order to the extent the trial court concluded that, in all other respects, 2010 N.C. Sess. Laws 103 is constitutional. I would also hold the trial court did not err in dissolving the preliminary injunction prohibiting enforcement of N.C. Gen.Stat. § 14–306.4.

The statute states in pertinent part:

(b) Notwithstanding any other provision of this Part, it shall be unlawful for any person to operate, or place into operation, an electronic machine or device to do either of the following:

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

(1) *Conduct* a sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize.

(2) *Promote* a sweepstakes that is conducted through the use of an entertaining display, including the entry process or the reveal of a prize.

*6 N.C. Gen.Stat. § 14–306.4(b) (2011) (emphasis added). Subsection (a) of the statute defines "entertaining display":

Entertaining display' means visual information, *capable of being seen by a sweepstakes entrant,* that takes the form of actual game play, or simulated game play, such as, by way of illustration and not exclusion:

a. A video poker game or any other kind of video playing card game.

b. A video bingo game.

c. A video craps game.

d. A video keno game.

e. A video lotto game.

f. Eight liner.

g. Pot-of-gold.

h. A video game based on or involving the random or chance matching of different pictures, words, numbers, or symbols not dependent on the skill or dexterity of the player.

i. Any other video game not dependent on skill or dexterity that is played *while revealing a prize as the result of an entry into a sweepstakes.*

N.C. Gen.Stat. § 14–306.4(a)(3) (emphasis added). "Sweepstakes" is also defined by the statute as "any game, advertising scheme or plan, or other promotion, which, *with or without payment of any consideration,* a person may enter to win or become eligible to receive any prize, *the determination of which is based upon chance*." N.C. Gen.Stat. § 14–306.4(a)(5) (emphasis added).

**A. Regulation of Speech**

As the majority notes, the United States Supreme Court recently released *Brown v. Entm't Merchs. Ass'n,* ––– U.S. –––, –––, 131 S.Ct. 2729, 2733, 180 L.Ed.2d 708, 714 (2011), in which the Court held that video games are protected speech under the First Amendment:

Like the protected books, plays, and movies that preceded them, video games communicate ideas—and even social messages—through many familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium (such as the player's interaction with the virtual world). That suffices to confer First Amendment protection.

I, however, do not believe *Brown* applies to plaintiffs' appeal. Rather, I conclude that N.C. Gen.Stat. § 14–306.4 regulates conduct not speech.

An ordinance similar to N.C. Gen.Stat. § 14–306.4 was recently challenged as an unconstitutional restraint on free speech in the United States District Court of the Middle District of Florida. *Allied Veterans of the World, Inc.: Affiliate 67 v. Seminole County, Fla.,* 783 F.Supp.2d 1197 (M.D.Fla.2011) (hereinafter "*Allied Veterans I* "). There, the plaintiffs challenged an ordinance enacted in Seminole County, Florida that prohibited the use and possession of " 'simulated gambling devices,' " defined as devices which provide " 'a computer simulation of any game, and which may deliver or entitle the person or persons playing or operating the device to a payoff.' " *Id.* at 1201 (quoting Seminole County Ordinance 2011–1).

The plaintiffs in *Allied Veterans I* sold internet access for use by their customers on the plaintiffs' desktop computers. *Id.* at 1200. The plaintiffs also provided their customers the opportunity to participate in a sweepstakes. *Id.* The customer had the option to play a video simulation of a casino game to learn whether the customer had won the sweepstakes prize. *Id.*

*7 The plaintiffs challenged the Seminole County ordinance as violating the federal constitution arguing, *inter alia,* it was a content-based restriction on

--- S.E.2d ----, 2012 WL 695984 (N.C.App.)
(Cite as: 2012 WL 695984 (N.C.App.))

speech that fails strict scrutiny, and it was unconstitutionally vague. *Id.* at 1202, 1206. The district court rejected the plaintiffs' First Amendment challenge holding that the ordinance regulated the plaintiffs' conduct rather than their speech. *Id.* at 1202. The district court further held that because the plaintiffs' conduct was clearly proscribed by the ordinance, they could not challenge the ordinance as being void for vagueness. *Id.* at 1207.

After the Supreme Court's decision in *Brown, supra,* the plaintiffs in *Allied Veterans I* filed an interlocutory appeal. *Allied Veterans of the World, Inc.: Affiliate 67 v. Seminole County, Fla.,* ---- F.Supp.2d ----, 2011 WL 3958437 (M.D.Fla. Sept. 8, 2011) (No. 6:11–CV–155–ORL–28DAB) (hereinafter "*Allied Veterans II*"). In *Allied Veterans II,* the plaintiffs argued that in light of the Supreme Court's holding in *Brown* the Seminole County ordinance was an impermissible restriction on free speech. *Id.* at ----, 2011 WL 3958437 at 1. The district court again rejected the plaintiffs' argument and held that *Brown* was inapplicable because the ordinance at issue regulated conduct, not speech. *Id.* The plaintiffs were free to provide their video games to their customers so long as the games were not associated with the sweepstakes payoff. *Id.* at ----, 2011 WL 3958437 at 2. I find this reasoning persuasive and applicable in this case.

Here, N.C. Gen.Stat. § 14–306.4 does not prohibit plaintiffs from allowing a customer to play plaintiffs' video games. Rather, the statute prohibits plaintiffs from *conducting* or *promoting* their sweepstakes through the use of a video game. Plaintiffs are free to allow anyone to play their video games so long as the video games are not used to conduct or promote a sweepstakes. Because the statute merely regulates conduct and not speech, it is not subject to strict scrutiny, as plaintiffs contend. Rather, the law is subject to a rational basis review, whereby the law need only be rationally related to the State's police powers. *Rhyne v. K–Mart Corp.,* 358 N.C. 160, 181, 594 S.E.2d 1, 15 (2004).

Here, one of the Legislature's stated purposes in enacting N.C. Gen.Stat. § 14–306.4 was to protect the morals of the inhabitants of our State from the "vice and dissipation" that is brought about by the "repeated play" of sweepstakes due to the use of "simulated game play," similar to video poker, "even when [such game play is] allegedly used as a marketing technique." 2010 N.C. Sess. Law 103. The protection of the morals of our State's inhabitants is a legitimate government purpose. *See State v. Warren,* 252 N.C. 690, 694, 114 S.E.2d 660, 664 (1960) ("The State possesses the police power in its capacity as a sovereign, and in the exercise thereof the Legislature may enact laws, within constitutional limits, to protect or promote the health, morals, order, safety and general welfare of society.") I conclude the State's prohibition of the use of "entertaining displays" that use actual or simulated game play for the promotion and conducting of sweepstakes is rationally related to this legitimate governmental purpose.

**B. Overbreadth**

*8 Plaintiffs also argue that N.C. Gen.Stat. § 14–306.4 bans *all* video games from being used in promotional sweepstakes, including videos games unrelated to gambling, and is thereby unconstitutionally overbroad. I disagree.

Plaintiffs place much emphasis on the fact that consideration is not required to play their sweepstakes; free entries are available upon request. This fact, they argue, takes sweepstakes out of the realm of gambling and establishes that their sweepstakes are a legal activity. However, as this Court stated in *Animal Prot. Soc. of Durham, Inc. v. State,* "[i]t is the [L]egislature's prerogative to establish the conditions under which bingo, lotteries, or *other games of chance* are to be permitted." 95 N.C.App. 258, 269, 382 S.E.2d 801, 808 (1989) (concluding the plaintiffs' free bingo game was properly regulated by the State under our gambling statutes as the Legislature defined "bingo," in N.C. Gen.Stat. § 309.6 (1986), as a "game of chance," and did not require payment of consideration to play the game). Thus, the fact that individuals can participate in plaintiffs' sweepstakes and watch their video games without payment of consideration does not establish that the State is without power to regulate how sweepstakes are conducted.

" 'The overbreadth doctrine holds that a law is void on its face if it sweeps within its ambit not solely activity that is subject to governmental control, but also includes within its prohibition the practice of a protected constitutional right.' " *Treants Enters., Inc. v. Onslow County,* 94 N.C.App. 453, 458, 380 S.E.2d 602, 604 (1989) (quoting *Clark v. City of Los Ange-*

--- S.E.2d ----, 2012 WL 695984 (N.C.App.)
(Cite as: 2012 WL 695984 (N.C.App.))

*les*, 650 F.2d 1033, 1039 (9th Cir.1981), *cert. denied*, 456 U.S. 927, 72 L.Ed.2d 443 (1982)). Plaintiffs argue that N.C. Gen.Stat. § 14–306.4 is overbroad because the law's definition of "entertaining display" encompasses *all* video games, "from classic arcade games like Pac–Man to modern, story-driven video games"—and video games are protected speech. However, I conclude N.C. Gen.Stat. § 14–306.4 does not ban video games nor prohibit plaintiffs from allowing a customer to play their video games. Rather, the statute prohibits plaintiffs, or any person, from *conducting* or *promoting* a sweepstakes through the use of a video game. Plaintiffs are free to allow anyone to play their video games so long as the video games are not used to conduct or promote sweepstakes. The statute does not "include[ ] within its prohibition the practice of a protected constitutional right," *Treants Enters.*, 94 N.C.App. at 458, 380 S.E.2d at 604 (citation and quotation marks omitted), and thus is not overbroad.

I conclude N.C. Gen.Stat. § 14–306.4 is not a content-based restraint on protected expression and is not unconstitutionally overbroad. Accordingly, I would reverse the trial court's order to the extent that it held N.C. Gen.Stat. § 14–306.4(a)(3)(i) is unconstitutional; I would affirm the order to the extent the trial court concluded that, in all other respects, 2010 N.C. Sess. Laws 103 is constitutional; and I would hold the trial court did not err in dissolving the preliminary injunction prohibiting enforcement of N.C. Gen.Stat. § 14–306.4.

N.C.App.,2012.
Hest Technologies, Inc. v. State ex rel. Purdue
--- S.E.2d ----, 2012 WL 695984 (N.C.App.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.